## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
ARICA CONSULTING & CONTRACTING, INC.,               )
                                                    )
            *Plaintiff,*                             )
                                                    )
    v.                                               )  Civil Action No.:
                                                    )  1:07-cv-01661-EGS
GOEL CONSTRUCTION SERVICES, INC.,                   )  Judge Emmet G. Sullivan
                                                    )
            *Defendant.*                             )
_____)

### MOTION TO SET ASIDE ENTRY OF DEFAULT

Pursuant to Fed.R.Civ.P. 55(c), Defendant Goel Services, Inc., f/k/a Goel Construction Services, Inc., by counsel, moves this Court to set aside the default entered against Goel Construction Services, Inc. in this matter on January 14, 2008 by the Clerk of this Court. In support thereof, Goel Services, Inc. will rely upon the accompanying Memorandum, the accompanying exhibits, including the Affidavit of P.J. Goel, and argument of counsel at the hearing on this matter.

WHEREFORE, Goel Services, Inc. respectfully requests this Court to set aside the entry of default, permit Goel Services, inc. to file a response to the Complaint within 20 days of entry of the order, and grant such other and further relief as this Court deems equitable and just.

Date:  January 17, 2008

Respectfully submitted,

GOEL SERVICES, INC., f/k/a/ GOEL CONSTRUCTION SERVICES, INC., by counsel,

 /s/  Paul V. Waters_____
Paul V. Waters, D.C. Bar No. 368970
paulwaters@waterswise.com
David Hilton Wise, D.C. Bar No. 427796
davidwise@waterswise.com
WATERS & WISE, PLLC
10565 Fairfax Boulevard, Suite 205
Fairfax, Virginia 22030
Tel:    (703) 934-6377
Fax:    (703) 934-6379

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January, 2008, true copies of the foregoing Motion to Set Aside Entry of Default and Memorandum in support thereof, the exhibits thereto, and a proposed Order were served by e-filing and first-class mail, postage-prepaid, on the following counsel of record:

Eric R. Stanco, Esq.
V. Elizabeth Powell, Esq.
STANCO & ASSOCIATES
126 C Street, N.W.
Washington, D.C. 20001
*Counsel for Plaintiff Arica Consulting & Contracting, Inc.*

 /s/  Paul V. Waters_____
Paul V. Waters

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

ARICA CONSULTING & CONTRACTING, INC.,

          *Plaintiff,*

      v.

GOEL CONSTRUCTION SERVICES, INC.,

          *Defendant.*

_____

)
)
)
)
)
) Civil Action No.:
) 1:07-cv-01661-EGS
) Judge Emmet G. Sullivan
)
)
)

## MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT

      Defendant Goel Services, Inc., f/k/a Goel Construction Services, Inc., by counsel, in support of its Motion to Set Aside Entry of Default, states as follows:

### STATEMENT OF FACTS

      1.      On January 10, 2003, Defendant Goel Construction Services, Inc. ("Goel")[1] and Plaintiff Arica Consulting & Contracting ("Arica") entered into a subcontract agreement for the performance of certain construction work on a project located in Perry Point, Maryland (the "Project"). Complaint, ¶ 8; See also the Affidavit of PJ Goel in Support of Motion to Set Aside Entry of Default ("Affidavit of PJ Goel"), ¶ 2 and Exhibit 1 thereto.

      2.      On June 25, 2003, Goel Construction Services, Inc. legally changed its name to Goel Services, Inc. Affidavit of PJ Goel, ¶ 3; Exhibit 2.

---

[1]     As discussed in this Memorandum, Goel Construction Services, Inc. legally changed its name to Goel Services, Inc. and "Goel" shall refer to both names, as warranted by the discussion.

3.      On September 8, 2003, Goel issued a change order to the subcontract agreement with Arica that advised Arica that Goel Construction Services, Inc. had changed its name to Goel Services, Inc.  Affidavit of PJ Goel, ¶ 4; Exhibit 3.

4.      On April 6, 2004, Goel sent Arica another notice that it had undergone a legal name change and was now known as "Goel Services, Inc."  Affidavit of PJ Goel, ¶ 5; Exhibit 4.

5.      On April 15, 2004, the District of Columbia Department of Consumer and Regulatory Affairs issued a Certificate of Amended Authority acknowledging Goel's name change.  Affidavit of PJ Goel, ¶ 6; Exhibit 5.

6.      Goel Services, Inc. is duly registered with the District of Columbia and has maintained a registered agent within the District of Columbia for the service of process.  Goel's registered agent is CT Corporation Systems, a well known business that serves as registered agent for many corporations in the District of Columbia.  Affidavit of PJ Goel, ¶ 7; Exhibit 6.

7.      On September 20, 2007, Arica filed a Complaint against Goel Construction Services, Inc. alleging breach of the subcontract and quasi-contract recovery for alleged damages arising out of the Project.

8.      Arica did not serve the Summons and Complaint on Goel's registered agent or otherwise deliver a copy of the Complaint to Goel.

9.      From the record, it does not appear that Arica even attempted to serve the Complaint on Goel's registered agent.

10.     Instead, on October 11, 2007, Arica attempted to serve process on Goel by serving the representative of the Mayor of the District of Columbia allegedly pursuant to D.C. Code 29.101.12(b).  *See* Affidavit of Service.

11.    Goel never received a copy of the Summons and Complaint in this action prior to receiving the Notice of Entry of Default.  Affidavit of PJ Goel, ¶ 8.

12.    On January 14, 2008, the Clerk of the Court entered a default against Goel for Goel's failure to plead or otherwise defend the action.

## STANDARD OF REVIEW

The decision whether to set aside a default is committed to the sound discretion of the trial court.  *Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir. 1980) (*citing e.g., Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372 (D.C.Cir. 1980); *Moldwood Corp. v. Strutts*, 410 F.2d 351 (5th Cir. 1969)).  A default may be set aside under Fed.R.Civ.P. 55(c) for "good cause."  Id.; Fed.R.Civ.P. 55(c).  The philosophy of modern federal procedure favors trial on the merits.  A default should generally be set aside where the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful.  *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C. Cir. 1966) (*citing* 6 Moore's Federal Practice, p. 55.10 (2d ed. 1953); *Erick Rios Bridoux v. Eastern Air Lines*, 93 U.S.App.D.C. 369, 372, 214 F.2d 207, 210 (1954); *Patapoff v. Vollstedt's Inc.*, 267 F.2d 863, 865-866 (9th Cir. 1959)); *See also Savage v. Scales*, 310 F.Supp.2d 122, 127 (D.D.C. 2004) (similar standard for determining whether default judgment is appropriate).  In determining the existence of a meritorious defense, likelihood of success is not the measure; rather, a party's allegations are meritorious if they contain even a hint of a suggestion which, if proven, would constitute a complete defense.  *Candido v. District of Columbia*, 242 F.R.D. 151, 157 (D.D.C. 2007) (citing *Asia N. Am. Eastbound Rate Agreement v. BJI Indus., Inc.*, 900 F.Supp. 507, 511 (D.D.C. 1995)).

## ARGUMENT

The default entered against Goel in this matter must be vacated as Goel was not properly served with process.  In addition, there is good cause to set aside the entry of default.  Goel was

not aware of the Complaint and the default was not willful. Goel has acted promptly to set aside the default. Goel has valid defenses to the claims asserted by Arica.

## I.    GOEL WAS NOT SERVED

Although Arica alleges it obtained service on Goel by serving the office of the Mayor of the District of Columbia, this service was improper. The D.C. Code states:

> Whenever a corporation shall fail to appoint or maintain a registered agent in the District, or whenever the registered agent cannot with reasonable diligence be found at the registered office of the corporation in the District, or whenever the articles of incorporation of any domestic corporation shall be revoked, the Mayor shall be an agent of the corporation upon whom any process against the corporation may be served and upon whom any notice or demand required or permitted by law to be served upon the corporation may be served.

D.C. Code § 29-101.12 (b) (2001) (emphasis added).    None of these conditions for making the Mayor the registered agent of Goel applies to these circumstances. Goel had informed Arica that it had changed its name to Goel Services, Inc. Statement of Facts ("SOF"), ¶¶ 3-4. Goel Services, Inc. was properly registered under that name and maintained a registered agent in the District Court. SOF, ¶¶ 5 & 6. There is no basis for making the Mayor Goel's registered agent under § 29.101-12. Therefore there was no service on Goel as required by Fed.R.Civ.P. 4.

As there was no service on Goel as required by the Federal Rules of Civil Procedure, this Court did not have personal jurisdiction over Goel at the time default was entered. *Mwani v. bin Laden*, 471 F.3d 1, 8 (D.C.Cir. 2005) (*citing Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404 (1987)). A defendant can successfully challenge a default judgment in the rendering court on the grounds of lack of personal jurisdiction. Id., at 7 (*citing Combs v. Nick Garin Trucking*, 825 F.2d 437, 438 (D.C.Cir. 1987). As this Court did not have personal jurisdiction over Goel at the time default was entered, the entry of default should be set aside as a nullity.

## II.     THERE IS GOOD CAUSE TO SET ASIDE THE ENTRY OF DEFAULT

Even if the Court finds that it had personal jurisdiction, there is good cause to set aisde the default as permitted by Fed.R.Civ.P. 55(c).

> *A.     Goel was unaware of these preceedings and has promptly taken steps to set aside the entry of default.*

Goel never received a copy of the Summons and Complaint prior to the entry of default. SOF, ¶ 11.  Goel did not receive a copy of the Summons and Complaint from the Mayor's office as required by D.C. Code § 29-101.12 and Goel never received a copy of the Summons and Complaint from Arica.  Arica did mail a copy of the "Affidavit of Service" to Goel, which Goel received on January 15, 2008.  Upon receiving the "Affidavit of Service", Goel promptly retained counsel, who then obtained a copy of the Complaint and Entry of Default via PACER. By the time Goel received a copy of the Complaint, the Clerk of the Court had already entered a default.  Goel's failure to file a response to the Complaint was not willful.

> *B.     Arica would not be prejudiced if the entry of a default is set aside.*

Arica would not suffer prejudice if the entry of default is set aside.  Arica can still maintain all of its rights under the subcontract agreement and Arica has not expended any substantial level of resources in prosecuting this case to date.  It was Arica who knowingly failed to properly serve the Complaint on Goel and who seeks it avoid its contractual obligations under the subcontract agreement.  There is no prejudice.

> *C.     There are meritorious defenses to Arica's claim.*

The claim that Arica has asserted in this matter is barred by the terms of the subcontract agreement between the parties.  The subcontract states that Goel will pay Arica only after Goel receives payment from the Owner for Arica's work.  Exhibit 1, ¶¶ 11.3 & 12.1.  Goel has not received payment for approximately $200,000 of Arica's work on the Project from the Owner.

Affidavit of PJ Goel, ¶ 9. This is the same amount that Arica is claiming it is due it from Goel in this matter. The Owner is not paying because of deficiencies in Arica's work. Since Goel has not received payment for this work from the Owner due to the fault of Arica, Goel has a complete defense to Arica's claim. Arica is not entitled to payment for its own defective work.

Additionally, the subcontract agreement states that all disputes between the parties arising under the subcontract agreement shall be resolved through arbitration, with mediation as a condition precedent to arbitration. Exhibit 1, ¶¶ 6.1.1 & 6.2.1. When parties to a contract have provided that a particular type of dispute should be settled in arbitration rather than litigation, a court may not override that agreement by deciding such a dispute. *National R.R. Passenger Corp. v. Boston and Maine Corp.*, 850 F.2d 756, 759 (D.C.Cir. 1988). Arica is bound by the arbitration provision and Goel has not waived this contractual requirement. Therefore, this claim must in any event be dismissed or stayed pending resolution of this claim through mediation and arbitration. Moreover, venue for this action is more proper in Maryland, the site of the Project.

## CONCLUSION

The entry of default against Goel in this matter must be set aside. This Court did not have personal jurisdiction over Goel at the time of entry of default and therefore entry of default is improper. Goel was not served and was unaware of these proceedings. Goel has acted promptly to correct the entry of default and has established that there is "good cause" for vacating the entry of default. Goel's lack of response was not willful, Arica would not be prejudiced by vacating the entry of default, and Goel has a complete defense to the claims that Arica has asserted in this matter.

Date:   January 17, 2008

Respectfully submitted,

GOEL SERVICES, INC., f/k/a/ GOEL CONSTRUCTION SERVICES, INC., by counsel,

_/s/  Paul V. Waters_____
Paul V. Waters, D.C. Bar No. 368970
paulwaters@waterswise.com
David Hilton Wise, D.C. Bar No. 427796
davidwise@waterswise.com
WATERS & WISE, PLLC
10565 Fairfax Boulevard, Suite 205
Fairfax, Virginia 22030
Tel:    (703) 934-6377
Fax:    (703) 934-6379

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARICA CONSULTING & CONTRACTING, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) 1:07-cv-01661-EGS |
| GOEL CONSTRUCTION SERVICES, INC., | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

## AFFIDAVIT OF P.J. GOEL IN SUPPORT OF
## MOTION TO SET ASIDE ENTRY OF DEFAULT

Piyush J. Goel, after being duly sworn, hereby states under oath as follows:

1.      I am commonly known as P.J. Goel.  I am President of Goel Services, Inc. ("Goel").  I am authorized to make this affidavit on Goel's behalf.  I am over 21 years of age and make this affidavit based upon my own personal information and knowledge.

2.      On January 10, 2003, Goel Construction Services, Inc. and Arica Consulting & Contracting ("Arica") entered into a subcontract agreement for the performance of certain construction work (the "Project").  A true copy of the subcontract agreement is attached hereto as Exhibit 1.

3.      On June 25, 2003, Goel Construction Services, Inc. legally changed its name to Goel Services, Inc.   A true copy of the Certificate of Amendment of Certificate of Incorporation issued by the Secretary of State of Delaware is attached hereto as Exhibit 2.

4.      On or around September 8, 2003, Goel issued Change Order No. 3802-CO7 to Arica which advised Arica that Goel Construction Services, Inc. had changed its name to Goel Services, Inc.  A true copy of the change order is attached hereto as Exhibit 3.

5.     On April 6, 2004, Goel sent Arica a letter informing Arica that Goel had undergone a legal name change and was now known as "Goel Services, Inc." A true copy of this letter is attached hereto as Exhibit 4.

6.     On April 15, 2004, the District of Columbia Department of Consumer and Regulatory Affairs issued a Certificate of Amended Authority recording Goel's name change. A true copy of this Certificate is attached hereto as Exhibit 5.

7.     Goel has been duly registered with the District of Columbia and has maintained a registered agent within the District of Columbia for the service of process at all times relevant to this action. Goel's registered agent is CT Corporation Systems. *See* Exhibit 6.

8.     Prior to receiving an Affidavit in Support of Default on Tuesday, January 15, 2008, by regular mail, Goel had never received a copy of the Complaint or Summons for this case and was completely unaware that this lawsuit had been filed.

9.     Arica's lawsuit in this matter is without merit. Receipt of payment by Goel from the Owner for Arica's work is a condition precedent to payment of Arica by Goel. Goel has not received payment from the Owner for approximately $200,000 of work that Arica performed on the Project and therefore Goel is not liable for these amounts to Arica.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January, 17, 2008 in Washington, District of Columbia.

_____

Piyush J. Goel



# Standard Form of Agreement Between Contractor and Subcontractor

**AIA Document A401 - 1997**

**1997 Edition - Electronic Format**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.

Copyright 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

**AGREEMENT** made as of the <u>10th</u> day of <u>January</u> in the year <u>2003</u>
*(In words, indicate day, month and year)*

**BETWEEN** the ~~Owner:~~Contractor:
*(Name, address and other information)*
<u>Goel Construction Services</u>
<u>1201 Pennsylvania Avenue, NW</u>
<u>Suite 300</u>
<u>Washington, DC 20004</u>

and the Subcontractor:
*(Name, address and other information)*
<u>Arica Consulting & Contracting</u>
<u>12545 Frederick Road</u>
<u>West Friendship, MD 21794</u>

The Contractor has made a contract for construction dated

With the Owner:
*(Name, address and other information)*
<u>Department of Veterans Affairs</u>
<u>Contracting Division</u>

© AIA DOCUMENT A401 - CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

**EXHIBIT**
**1**
PENGAD 800-631-6989

Electronic Format  A401-1997

1

*PK 1/17*

Building 101
Perry Point, MD 21902
Contract number:          V 512(P)C-654    t.o. #05    DCB Job Number :    3802

For the following Project: Building 10 Replacement/Partial Hospitalization Program at VA Medical HealthCare Systems
Perry Point, MD.
Project# 512-172. Obligation/PO 512-X37001
GCS Job # 3802

*(Include detailed description of Project, location and address)*

which Contract is hereinafter referred to as the Prime Contract and which provides for the furnishing of labor, materials, equipment and services in connection with the construction of the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner and Contractor (from which compensation amounts may be deleted) and the other Contract Documents enumerated therein has been made available to the Subcontractor.

The Architect for the Project is :
*(Name, address and other information)*
Polt Design Group
15 East Churchville Road
Suite 102A
Bel Air, MD 21014

The Contractor and the Subcontractor agree as follows

## ARTICLE 1 THE SUBCONTRACT DOCUMENTS

**1.1** The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the Agreement between the Owner and Contractor, whether before or after the execution of this Agreement; (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Agreement, appears in Article 16.

**1.2** Except to the extent of a conflict with a specific term or condition contained in the Subcontract Documents, the General Conditions governing this Subcontract shall be the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**1.3** The Subcontract may be amended or modified only by a Modification. The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and the Subcontractor, (2) between the Owner and the Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor.

**1.4** The Subcontractor shall be furnished copies of the Subcontract Documents upon request, but the Contractor may charge the Subcontractor for the reasonable cost of reproduction of more than three (3) copies.

## ARTICLE 2 MUTUAL RIGHTS AND RESPONSIBILITIES

**2.1** The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of the edition of AIA Document A201 current as of the date of this Agreement apply to this Agreement pursuant to Paragraph 1.2 and provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arrca.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format  A401-1997

documents, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract. Where a provision of such documents is inconsistent with a provision of this Agreement, this Agreement shall govern.

**2.2** The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor, assuming toward each other all obligations and responsibilities which the Contractor and Subcontractor assume toward each other and having the benefit of all rights, remedies and redress each against the other which the Contractor and Subcontractor have by virtue of the provisions of this Agreement.

## ARTICLE 3 CONTRACTOR
### 3.1 SERVICES PROVIDED BY THE CONTRACTOR
**3.1.1**    The Contractor shall cooperate with the Subcontractor in scheduling and performing the Contractor's Work to avoid conflicts or interference in the Subcontractor's Work and shall expedite written responses to submittals made by the Subcontractor in accordance with Paragraph 4.1 and Article 5. As soon as practicable after execution of this Agreement, the Contractor shall provide the Subcontractor copies of the Contractor's construction schedule and schedule of submittals, together with such additional scheduling details as will enable the Subcontractor to plan and perform the Subcontractor's Work properly. The Subcontractor shall be notified promptly of subsequent changes in the construction and submittal schedules and additional scheduling details.

**3.1.2**    The Contractor shall provide suitable areas for storage of the Subcontractor's materials and equipment during the course of the Work. Additional costs to the Subcontractor resulting from relocation of such facilities at the direction of the Contractor, except as previously agreed upon, shall be reimbursed by the Contractor.

**3.1.3**    Except as provided in Article 14, the Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms.

### 3.2 COMMUNICATIONS
**3.2.1**    The Contractor shall promptly make available to the Subcontractor information, including information received from the Owner, which affects this Subcontract and which becomes available to the Contractor subsequent to execution of this Subcontract.

**3.2.2**    The Contractor shall not give instructions or orders directly to the Subcontractor's employees or to the Subcontractor's Sub-subcontractors or material suppliers unless such persons are designated as authorized representatives of the Subcontractor.

**3.2.3**    The Contractor shall permit the Subcontractor to request directly from the Architect information regarding the percentages of completion and the amount certified on account of Work done by the Subcontractor.

**3.2.4**    If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Contractor, a subcontractor or anyone directly or indirectly employed by them (other than the Subcontractor), the Contractor shall, prior to harmful exposure of the Subcontractor's employees to such substance, give written notice of the chemical composition thereof to the Subcontractor in sufficient detail and time to permit the Subcontractor's compliance with such laws.

**3.2.5**    The Contractor shall furnish to the Subcontractor within 30 days after receipt of a written request, or earlier if so required by law, information necessary and relevant for the Subcontractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property, usually referred to as the site, on which the Project is located and the Owner's interest therein.

**3.2.6**    If the Contractor asserts or defends a claim against the Owner which relates to the Work of the Subcontractor, the Contractor shall make available to the Subcontractor information relating to that portion of the claim which relates to the Work of the Subcontractor.

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format  A401-1997

3

## 3.3 CLAIMS BY THE CONTRACTOR

**3.3.1** Liquidated damages for delay, if provided for in Paragraph 9.3 of this Agreement, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor or any person or entity for whose acts the Subcontractor may be liable, and in no case for delays or causes arising outside the scope of this Subcontract.

**3.3.2** The Contractor's claims for services or materials provided the Subcontractor shall require:

.1 ~~seven~~ two days' prior written notice except in an emergency;

.2 written compilations to the Subcontractor of services and materials provided and charges for such services and materials no later than the fifteenth day of the following month.

## 3.4 CONTRACTOR'S REMEDIES

**3.4.1** If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within ~~three~~ two working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after ~~three~~ one day ~~days~~ following receipt by the Subcontractor of an additional written notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor.

## ARTICLE 4  SUBCONTRACTOR
### 4.1 EXECUTION AND PROGRESS OF THE WORK

**4.1.1** The Subcontractor shall supervise and direct the Subcontractor's Work, and shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces.

**4.1.2** The Subcontractor shall promptly submit Shop Drawings, Product Data, Samples and similar submittals required by the Subcontract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Contractor or other subcontractors. Nine sets of submittals (submittals include, but are not limited to, shop drawings, product data, samples, etc) are required for this project. If less than nine (9) sets of submittals are supplied, Contractor may deduct reproduction costs unilaterally.

**4.1.3** The Subcontractor shall submit to the Contractor a schedule of values allocated to the various parts of the Work of this Subcontract, aggregating the Subcontract Sum, made out in such detail as the Contractor and Subcontractor may agree upon or as required by the Owner, and supported by such evidence as the Contractor may require. In applying for payment, the Subcontractor shall submit statements based upon this schedule.

**4.1.4** The Subcontractor shall furnish to the Contractor periodic progress reports on the Work of this Subcontract as mutually agreed, including information on the status of materials and equipment which may be in the course of preparation, manufacture or transit.

**4.1.5** The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Prime Contract. The Architect's (Owner and/or Construction Manager)decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract.

**4.1.6** The Subcontractor shall pay for all materials, equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

**4.1.7** The Subcontractor shall take necessary precautions to protect properly the Work of other subcontractors from damage caused by operations under this Subcontract.

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format  A401-1997

4

PK
4/17

**4.1.8**   The Subcontractor shall cooperate with the Contractor, other subcontractors and the Owner's own forces whose Work might interfere with the Subcontractor's Work. The Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, if required by the Prime Contract, specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, other subcontractors or the Owner's own forces.

## 4.2 LAWS, PERMITS, FEES AND NOTICES
**4.2.1**   The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's Work, the furnishing of which is required of the Contractor by the Prime Contract.

**4.2.2**   The Subcontractor shall comply with Federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts insofar as applicable to the performance of this Subcontract.

## 4.3 SAFETY PRECAUTIONS AND PROCEDURES
**4.3.1**   The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within three days an injury to an employee or agent of the Subcontractor which occurred at the site.

**4.3.2**   If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Subcontractor, the Subcontractor's Sub-subcontractors or anyone directly or indirectly employed by them, the Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to the Contractor in sufficient detail and time to permit compliance with such laws by the Contractor, other subcontractors and other employers on the site.

**4.3.3**   If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Subcontractor, the Subcontractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Contractor in writing. When the material or substance has been rendered harmless, the Subcontractor's Work in the affected area shall resume upon written agreement of the Contractor and Subcontractor. The Subcontract Time shall be extended appropriately and the Subcontract Sum shall be increased in the amount of the Subcontractor's reasonable additional costs of demobilization, delay and remobilization, which adjustments shall be accomplished as provided in Article 5 of this Agreement.

**4.3.4**   To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Subcontractor, the Subcontractor's Sub-subcontractors, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 4.3.3 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

## 4.4 CLEANING UP
**4.4.1**   The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.

**4.4.2**   As provided under Subparagraph 3.3.2, if the Subcontractor fails to clean up as provided in the Subcontract Documents, the Contractor may charge the Subcontractor for the Subcontractor's appropriate share of cleanup costs.

## 4.5 WARRANTY
**4.5.1**   The Subcontractor warrants to the Owner, Architect and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the Work

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

PK
5/17

of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Subcontract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Subcontractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Subcontractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents.

## 4.6 INDEMNIFICATION

**4.6.1**    To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

**4.6.2**    In claims against any person or entity indemnified under this Paragraph 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 4.6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

## 4.7 REMEDIES FOR NONPAYMENT

**4.7.1**    If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven days from the time payment should be made as provided in this Agreement, the Subcontractor may, without prejudice to any other available remedies, upon seven additional days' written notice to the Contractor, stop the Work of this Subcontract until payment of the amount owing has been received. The Subcontract Sum shall, by appropriate adjustment, be increased by the amount of the Subcontractor's reasonable costs of demobilization, delay and remobilization.

## ARTICLE 5 CHANGES IN THE WORK

**5.1** The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification. Unless otherwise directed by the Contractor, the Subcontractor shall not thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the Prime Contract.

**5.2** The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

**5.3** The Subcontractor shall make all claims promptly to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

Insert A: 5.4    The Contractor may at any time direct (in writing) the Subcontractor to perform extra work or changes under the subcontract.  Only extra work authorized by the contractor as an extra or change order shall be paid by the

© AIA DOCUMENT A401 –CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.



contractor. If the extra work direction does not originate from the Owner's direction and their is no prior agreement on price, the Subcontractor shall be paid the actual direct costs of said work plus ten (10%) percent for overhead and ten (10%) percent for profit for all overhead, profit, supervision, and small tools which will constitute the entire amount due the Subcontractor for extra work, including but not limited to any impact or delay effect.

## ARTICLE 6 MEDIATION AND ARBITRATION

### 6.1 MEDIATION

**6.1.1**   Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

**6.1.2**   The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**6.1.3**   The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

### 6.2 ARBITRATION

**6.2.1**   Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1.

**6.2.2**   Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.

**6.2.3**   A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

**6.2.4   Limitation on Consolidation or Joinder.** Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**6.2.5   Claims and Timely Assertion of Claims.** The party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded.

**6.2.6   Judgment on Final Award.** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7 TERMINATION, SUSPENSION OR ASSIGNMENT OF THE SUBCONTRACT

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.   WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

PK
7/17

## 7.1 TERMINATION BY THE SUBCONTRACTOR

**7.1.1**   The Subcontractor may terminate the Subcontract for the same reasons and under the same circumstances and procedures with respect to the Contractor as the Contractor may terminate with respect to the Owner under the Prime Contract, or for nonpayment of amounts due under this Subcontract for 60 days or longer. In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract with the Subcontractor, the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

## 7.2 TERMINATION BY THE CONTRACTOR

**7.2.1**   If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within ~~seven~~ three days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after ~~seven~~ three days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient. If the unpaid balance of the Subcontract Sum exceeds the expense of finishing the Subcontractor's Work and other damages incurred by the Contractor and not expressly waived, such excess shall be paid to the Subcontractor. If such expense and damages exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor of actual direct cost.

**7.2.2**   If the Owner/Contractor terminates the Contract for the Owner's/Contractor's convenience, the Contractor shall deliver written notice to the Subcontractor. The Contractor has the right to terminate the Subcontract for Contractor's convenience.

**7.2.3**   Upon receipt of written notice of termination, the Subcontractor shall:

.1   cease operations as directed by the Contractor in the notice;

.2   take actions necessary, or that the Contractor may direct, for the protection and preservation of the Work; and

.3   except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing Sub-subcontracts and purchase orders and enter into no further Sub-subcontracts and purchase orders.

**7.2.4**   In case of such termination for the Owner's/Contractor's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work ~~not~~ executed. Reasonable overhead and profit shall not exceed 15% combined.

## 7.3 SUSPENSION BY THE CONTRACTOR FOR CONVENIENCE

**7.3.1**   The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work of this Subcontract in whole or in part for such period of time as the Contractor may determine. In the event of suspension ordered by the Contractor, the Subcontractor shall be entitled to an equitable adjustment of the Subcontract Time and Subcontract Sum.

**7.3.2**   An adjustment shall be made for increases in the Subcontract Time and Subcontract Sum, including profit on the increased cost of performance, caused by suspension, delay or interruption. No adjustment shall be made to the extent:

.1   that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible;

.2   that an equitable adjustment is made or denied under another provision of this Subcontract.

## 7.4 ASSIGNMENT OF THE SUBCONTRACT

**7.4.1**   In the event of termination of the Prime Contract by the Owner or Prime Contractor, the Contractor may assign this Subcontract to the Owner, with the Owner's agreement, subject to the provisions of the Prime Contract and to the prior rights of the surety, if any, obligated under bonds relating to the Prime Contract. In such event, the Owner shall assume the Contractor's

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format A401-1997

PK
8/17

rights and obligations under the Subcontract Documents. If the Work of the Prime Contract has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted.

**7.4.2**    The Subcontractor shall not assign the Work of this Subcontract without the written consent of the Contractor, nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor.

Insert B: 7.4.3 Not Applicable

## ARTICLE 8  THE WORK OF THIS SUBCONTRACT

**8.1**  The Subcontractor shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others.
*(Insert a precise description of the Work of this Subcontract, referring where appropriate to numbers of Drawings, sections of Specifications and pages of Addenda, Modifications and accepted Alternates.)*
Division 1-15 - See subcontractor attached scope and exclusions  *DATED 1/10/03  3 PGS*

The Subcontractor agrees to maintain the construction schedule that will be provided by the Contractor and to avoid delays to other trades.

Subcontractor shall be responsible for coordination of work with Contractor, owner, ower representatives and other subcontractor(s).

All work to be performed in accordance with the prime contract.

## ARTICLE 9  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**9.1**  The Subcontractor's date of commencement is the date from which the Contract Time of Paragraph 9.3 is measured; it shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Contractor.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
Notice to proceed is effective immediately.

**9.2**  Unless the date of commencement is established by a notice to proceed issued by the Contractor, or the Contractor has commenced visible Work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

**9.3**  The Work of this Subcontract shall be substantially completed not later than
*(Insert the calendar date or number of calendar days after the Subcontractor's date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Subcontractor's Work, if not stated elsewhere in the Subcontract Documents.)*
Completion date  shall be defined by project schedule

, subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*
Liquidated damages shall be assessed up to a maximum of $1000 per calendar day and shall not exceed the amount of liquidated damages assessed by owner as per prime contract.

**9.4**  With respect to the obligations of both the Contractor and the Subcontractor, time is of the essence of this Subcontract.

**9.5**  No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Paragraph 5.3.

## ARTICLE 10    SUBCONTRACT SUM

**10.1**    The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of S One Million Fourty Thousand Two Hundred and Eighty Five Dollars Dollars ($1,042,285.00  ), subject to additions and

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

deductions as provided in the Subcontract Documents.

**10.2** The Subcontract Sum is based upon the following alternates, if any, which are described in the Subcontract Documents and have been accepted by the Owner and the Contractor:
*(Insert the numbers or other identification of accepted alternates.)*

10.2.1 Value of North Parking Lot (Has Been incorporated/included into subcontract price in Section 10.1: $24,000)

**10.3** Unit prices, if any, are as follows:

Unit Price 1:

Insert  C: Insert  C:

## ARTICLE 11    PROGRESS PAYMENTS

**11.1** Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to applications for payment submitted by the Contractor to the Architect, and certificates for payment issued by the Architect, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents. Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor and Subcontractor for Work properly performed by their contractors and suppliers shall be held by the Contractor and Subcontractor for those contractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor or Subcontractor for which payment was made to the Contractor by the Owner or to the Subcontractor by the Contractor, as applicable. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor or Subcontractor, shall create any fiduciary liability or tort liability on the part of the Contractor or Subcontractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor or Subcontractor for breach of the requirements of this provision.

**11.2** The period covered by each application for payment shall be one calendar month ending on the last day of the month, or as follows:  Original notarized invoice, **using appropriate AIA form,** must be received at Contractor's office no later than the 26th day of each month.  Invoices must be submitted in duplicate, with appropriate partial release executed.  Amount (percentage) completed to be agreed upon by Owner, Contractor, and Subcontractor.  In the event that no agreement is reached, Contractor determined amount shall be deemed final.

**11.3** Provided an application for payment is received by the Contractor not later than the 26th day of a month, the Contractor shall include the Subcontractor's Work covered by that application in the next application for payment which the Contractor is entitled to submit to the Architect. The Contractor shall pay the Subcontractor each progress payment within three working days after the Contractor receives payment from the Owner. If the Architect does not issue a certificate for payment or the Contractor does not receive payment for any cause which is not the fault of the Subcontractor, the Contractor shall pay the Subcontractor, on demand, a progress payment computed as provided in Paragraphs 11.7, 11.8 and 11.9.

**11.4** If an application for payment is received by the Contractor after the application date fixed above, the Subcontractor's Work covered by it shall be included by the Contractor in the next application for payment submitted to the Architect.

**11.5** Each application for payment shall be based upon the most recent schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as the Contractor may require. This schedule, unless objected to by the Contractor, shall be used as a basis for reviewing the Subcontractor's applications for payment.

**11.6** Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

**11.7** Subject to the provisions of the Subcontract Documents, the amount of each progress payment shall be computed as follows:

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

*PK*
*10/11/7*

**11.7.1**  Take that portion of the Subcontract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to the Contractor on account of the Work of the Subcontractor. Pending final determination of cost to the Contractor of changes in the Work which have been properly authorized by the Contractor, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

**11.7.2**  Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by the Contractor, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in the Contractor's application for payment;

**11.7.3**  Subtract the aggregate of previous payments made by the Contractor; and

**11.7.4**  Subtract amounts, if any, calculated under Subparagraph 11.7.1 or 11.7.2 which are related to Work of the Subcontractor for which the Architect has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

**11.8**  Upon the partial or entire disapproval by the Contractor of the Subcontractor's application for payment, the Contractor shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

**11.9  SUBSTANTIAL COMPLETION**

**11.9.1**  When the Subcontractor's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the certificate for payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, deducting any portion of the funds for the Subcontractor's Work withheld in accordance with the certificate to cover costs of items to be completed or corrected by the Subcontractor. Such payment shall be the entire unpaid balance of the Subcontract Sum if a full release of retainage is allowed under the Prime Contract for the Subcontractor's Work prior to the completion of the entire Project. If the Prime Contract does not allow for a full release of retainage, then such payment shall be an amount which, when added to previous payments to the Subcontractor, will reduce the retainage on the Subcontractor's substantially completed Work to the same percentage of retainage as that on the Contractor's Work covered by the certificate.

**ARTICLE 12    FINAL PAYMENT**

**12.1**  Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.
*(Insert provisions for earlier final payment to the Subcontractor, if applicable.)*

**12.2**  Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

**ARTICLE 13    INSURANCE AND BONDS**

**13.1**  The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

Insert  D:_____Insurance requirements:_____

Insert  E:_____General liability:_____$1,000,000_____

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format A401-1997

11

| Insert F: | Worker's Comp | statutory |
|---|---|---|
| Insert G: | Auto Liability | $1,000,000 |
| Insert H: | Certificates to be issued on an Acord form.  Cancellation clause shall be modified to include 30 day | |
| Insert I: | notice to contractor of cancellation.  A waiver of subrogation, in favor of Contractor, shall also be issued. | |

Contractor and Owner shall be named as additional insured on Subcontractor's General Liability and Auto Liability insurance policy(ies). Subcontractor shall maintain it's own inland marine insurance for theft of plant. Goel Construction Services, Inc. and Delaware Cornerstone Builders, Inc. shall be both certificate holders as well as additional insureds.

**13.2**    Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor.

**13.3**    Certificates of insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Article 13 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required in Article 12. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.

**13.4**    The Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required of the Contractor under the Prime Contract.

**13.5**    The Contractor shall promptly, upon request of the Subcontractor, furnish a copy or permit a copy to be made of any bond covering payment of obligations arising under the Subcontract.

**13.6**    Performance Bond and Payment Bond:
*(If the Subcontractor is to furnish bonds, insert the specific requirements here.)*
  Subcontractor is required to provide 100% performance and payment bond on AIA forms. Surety must be Treasury listed.

## 13.7    PROPERTY INSURANCE
**13.7.1**    When requested in writing, the Contractor shall provide the Subcontractor with copies of the property and equipment policies in effect for the Project. The Contractor shall notify the Subcontractor if the required property insurance policies are not in effect.

**13.7.2**    If the required property insurance is not in effect for the full value of the Subcontractor's Work, then the Subcontractor shall purchase insurance for the value of the Subcontractor's Work, and the Subcontractor shall be reimbursed for the cost of the insurance by an adjustment in the Subcontract Sum.

**13.7.3**    Property insurance for the Subcontractor's materials and equipment required for the Subcontractor's Work, stored off site or in transit and not covered by the Project property insurance, shall be paid for through the application for payment process.

## 13.8    WAIVERS OF SUBROGATION
**13.8.1**    The Contractor and Subcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner as a fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format A401-1997



## ARTICLE 14    TEMPORARY FACILITIES AND WORKING CONDITIONS

**14.1**    The Contractor shall furnish and make available to the Subcontractor the following temporary facilities, equipment and services; these shall be furnished at no cost to the Subcontractor unless otherwise indicated below:

Subcontractor shall be responsible for all portable ~~toilet~~ facilities and utilities. Prime Contractor to provide use of office trailer and free use of trailer telephone and electric.  All long distance bills incured by sucontractor will be billed to subcontractor. 

**14.2**    Specific working conditions:

*(Insert any applicable arrangements concerning working conditions and labor matters for the Project.)*

14.2.1    Subcontractor shall provide adequate manpower at project at all times.  Contractor shall determine minimum adequate subcontractor manpower.  Failure to provide adequate manpower shall result in subcontractor being wholly responsible for any liquidated damages and delays incurred by contractor; subcontractor shall be also wholly responsible for any Contractor costs (including but not limited to supervision and equipment rental).

14.2.2    Subcontractor shall be compliant with all provisions of the Prime Contract, including wage rates.  Subcontractor shall provide **three** (3) original copies of certified payrolls and statement of compliance within seven (7) calander days after the completion of a subcontractor pay period.  The certified payrolls and statement of compliance shall be provided, even if no work is performed during the subcontractor pay period. Each week's certified payroll shall be sequentially numbered.

14.2.3    Subcontractor shall provide appropriate representation at all scheduled meetings, unless waived in writing by Contractor.

14.2.4    Subcontractor shall submit daily job reports to Contractor.  Contractor shall provide reproducible format for daily report(s).

14.2.5    Subcontractor shall provide on-site project superintendent.  This individual shall be accessible by cellular phone.

14.2.6    All subcontractor personnel shall wear appropriate photo identification.  This identification shall include, photograph of employee, employee name, name of subcontractor, address of subcontractor, and phone number of subcontractor. 14.2.7 Subcontractor is required to have all subcontracts approved by Contractor.  All requirements of Prime Contract and this subcontract shall be incorporated in Subcontractor's subcontracts.  Disapproval of any subcontractor's subcontracts shall not be considered termination for convenience **as required by prime contract.**

14.2.8    Contractor reserves the right to approve or reject any subcontractor personnel.  Disapproval (rejection) of any subcontractor personnel shall not be considered an improper termination of the contract or suspension of the contract.

14.2.9    Project site shall be drug-free, no smoking, and alcohol free area.

14.2.10    Subcontractor shall provide project organization chart, including pager / home phone numbers for managerial personnel.

14.2.11    Any media statements must be approved in advance by Contractor.

14.2.12    Subcontractor shall provide and maintain at project site at all times, hazard communication program, safety program, AIDS awareness program, MSDS sheets, project organization chart, equal opportunity program, list of emergency phone numbers, and all other appropriate information.

## ARTICLE 15    MISCELLANEOUS PROVISIONS

**15.1**    Where reference is made in this Subcontract to a provision of another Subcontract Document, the reference refers to that provision as amended or supplemented by other provisions of the Subcontract Documents.

**15.2**    Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

*(Insert rate of interest agreed upon, if any.)*

Interest rate shall be at the US Department of Treasury's 30-year bond rate (as published in the Washington Post).

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's, Contractor's and Subcontractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**15.3**    Retainage and any reduction thereto is as follows:

All progress payments are subject to a maximum of ten (10) percent retainage or as allowed by prime contract.  All retainage

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format A401-1997

shall be paid when retainage is released and paid from owner and shall be billed (if not earlier) no later than at the completion of subcontractors punchlist.

**15.4**    The Contractor and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation, any consequential damages due to either party's termination in accordance with Article 7.

## ARTICLE 16    ENUMERATION OF SUBCONTRACT DOCUMENTS

**16.1**    The Subcontract Documents, except for Modifications issued after execution of this Subcontract, are enumerated as follows:

**16.1.1**    This executed 1997 edition of the Standard Form of Agreement Between Contractor and Subcontractor, AIA Document A401-1997;

**16.1.2**    The Prime Contract, consisting of the Agreement between the Owner and Contractor dated as first entered above and the other Contract Documents enumerated in the Owner-Contractor Agreement;

**16.1.3**    The following Modifications to the Prime Contract, if any, issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:

Modification                                                    Date

**16.1.4**    Other Documents, if any, forming part of the Subcontract Documents are as follows:
*(List any additional documents that are intended to form part of the Subcontract Documents. Requests for proposal and the Subcontractor's bid or proposal should be listed here only if intended to be part of the Subcontract Documents.)*
1.Subcontractor quote dated January 10 ,2003  $1,042,285.00

This Agreement entered into as of the day and year first written above.

_____        _____ 1/17/03
**CONTRACTOR** *(Signature)*    BY DIRECTION      **SUBCONTRACTOR** *(Signature)*

Piyush J. Goel, President                          Thomas J Twigg V.P.
*(Printed name and title)*                          *(Printed name and title)*

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format  A401-1997

# ARICA CONSULTING & CONTRACTING

**12545 Frederick Road**
**West Friendship, MD 21794**

**Office Phone: (410) 489-9412**                                      **Fax: (410) 489-9454**

January 10, 2003

Goel Construction Services

Attn:  P.J. Goel

Re:     IFB 512 (P) – 01 – 03
         V512 (P) C – 654 to #5

## QUOTE

We are pleased to provide you the following pricing and scope of work as requested.

Scope of work as listed below and outlined in contract IFB 512, awarded date of December 2, 2002.

1) Division #1 – Except as noted in exclusions.
2) Division #2 – Except as noted in exclusions.
3) Division #3 – Except as noted in exclusions.
4) Division #4 – Except as noted in exclusions.
5) Division #5 – Except as noted in exclusions.
6) Division #6 – Except as noted in exclusions.
7) Division #7 – Except as noted in exclusions.
8) Division #8 – Except as noted in exclusions.
9) Division #9 – Except as noted in exclusions.
10) Division #10 – Except as noted in exclusions.
11) Division #11 – Except as noted in exclusions.
12) Division #12 – Except as noted in exclusions.
13) Division #13 – Except as noted in exclusions and unit price #1.
14) Division #15 – Except as noted in exclusions.



** EXCLUSIONS **

Division #1

1) 01010 Paragraph 1.12 A,B,C.
2) 01010 Paragraph 1.16.
3) 01010 Paragraph 1.17 A,B,D.
4) 01010 Paragraph 1.18.
5) 01010 Paragraph 1.19 Electric only.
6) 01568 Paragraph 1,2.
7) 01568 Paragraph 1,3.

Division #2

1) 02531 Paragraph 1 – 19.
2) 02713 Paragraph Pages 1 – 16.

Division #13

1) All of Division 13850.

Division #15

1) 15250 – All Mech., Plumbing insulations per contract.

Division #16

All of Division 16050 – 16510.

General Exclusions:

1) Removal of rock over 2 L.F. in size each.
2) Cut, remove, haul, and dispose of unusable soils – to be priced if required as unit pricing later.
3) Demolition, removal disposal of any uncovered objects not indicated on drawings.
4) Hauling of unused or excess soils from VA property.
5) Office trailer, phone service.



6) C.P.M. scheduling – Arica will generate a bar schedule with Goel.
7) Lead paint removal and disposal.
8) Asbestos removal and all hazardous waste and disposal.

BASE BID LESS Deduct Bid Alt. #1        =        $  1,018,285.00
Add alt #1 per IFB 512                  =        $     24,000.00

               TOTAL                    =        $1,042,285.00


Add – Unit Price #1, Division #13
Sprinkler System complete for Crawl spaces,
  Dry Pipe Systems                      =        $     30,000.00



If any questions or need further information please call.

Sincerely,



Thomas J. Twigg
Vice President



PAGE  1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "GOEL CONSTRUCTION SERVICES, INC.", CHANGING ITS NAME FROM "GOEL CONSTRUCTION SERVICES, INC." TO "GOEL SERVICES, INC.", FILED IN THIS OFFICE ON THE TWENTY-FIFTH DAY OF JUNE, A.D. 2003, AT 12 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

EXHIBIT

2

PENGAD 800-631-6089



Harriet Smith Windsor, Secretary of State

3361939  8100

030420782

**AUTHENTICATION: 2516401**

**DATE: 07-08-03**

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 12:00 PM 06/25/2003*
*FILED 12:00 PM 06/25/2003*
*SRV 030420782 – 3361939 FILE*

## CERTIFICATE OF AMENDMENT

### OF

## CERTIFICATE OF INCORPORATION

* * * * *

Goel Construction Services, Inc., a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware,

DOES HEREBYCERTIFY:

FIRST:  That at a meeting of the Board of Directors of Goel Construction Services, Inc. resolutions were duly adopted setting forth a proposed amendment to the Certificate of Incorporation of the stockholders of said corporation for consideration thereof.  The resolution setting forth the proposed amendment is as follows:

RESOLVED,  that the Certificate of Incorporation of Goel Construction Services, Inc., be amended by changing First Article of thereof so that, as amended, said Article shall be and read as follows:
1. The name of the corporation Is Goel Services, Inc.

SECOND:  That thereafter, pursuant to resolution of its Board of Directors, a special meeting of the stockholders of said corporation was duly adopted in accordance with Section 222 of the General Corporation Law of the State of Delaware, at which meeting the necessary number of shares as required by statute were voted in favor of the amendment.

THIRD:  That said amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, said Goel Construction Service, Inc. has caused this certificate to be signed by Piyush J. Goel, its President, this 24th day of June, 2003 .

Goel Construction Services, Inc.

By _____
President

Distribution List:

**AIA**

## Contract Administration
## G701 Change Order

| | |
|---|---|
| Owner | |
| Architect | |
| Contractor | X |
| Field | |
| Other | |

PROJECT (*Name and address*):
Building 10H Replacement/PHP VA MD
HealthCare System,
Perry Point, MD

CHANGE ORDER NUMBER: 3802-C07
DATE: September 8, 2003

TO CONTRACTOR (*Name and address*):
Arica Consulting & Contracting
12545 Frederick Road
West Friendship, MD 21794

ARCHITECT'S PROJECT NUMBER:
CONTRACT DATE: January 10, 2003

CONTRACT FOR: Mechanical Work

THE CONTRACT IS CHANGED AS FOLLOWS:
(*Include, where applicable, any undisputed amount attributable to previously executed Construction Change Directives*)
**Unilateral Name Change**: Goel Construction Services Inc. has been changed to Goel Services Inc.
All correspondence, modifications etc. should be mailed to :
Goel Services, Inc.
5006 Jackson Street, Hyattsville, MD 20781

| | |
|---|---|
| The original (Contract Sum) (~~Guaranteed Maximum~~ Price) was | $ |
| The net change by previously authorized Change Orders | $ |
| The (Contract Sum) (~~Guaranteed Maximum Price~~) prior to this Change Order was | $ |
| The (Contract Sum) (Guaranteed Maximum Price) will be (increased) (~~decreased~~) (~~unchanged~~) by this Change Order in the amount of | $ |
| The new (Contract Sum) (~~Guaranteed Maximum Price~~) including this Change Order will be | $ |

The Contract Time will be ~~(increased)~~ ~~(decreased)~~ (unchanged) by ( ) days.
The date of Substantial Completion as of the date of this Change Order therefore is

NOTE: *This Change Order does not include changes in the Contract Sum, Contract Time or Guaranteed Maximum Price which have been authorized by Construction Directive until the cost and time have been agreed upon by both the Owner and Contractor, in which case a Change Order is executed to supersede the Construction Change Directive.*

NOT VALID UNTIL SIGNED BY THE ARCHITECT, CONTRACTOR AND OWNER.

| ARCHITECT (*Firm name*) | **SUB**CONTRACTOR (*Firm name*)<br>ARICA Consulting & Contracting, | OWNER (*Firm name*)<br>Goel Services,Inc |
|---|---|---|
| ADDRESS | ADDRESS<br>12545 Frederick Road<br>West Friendship, MD 21794 | ADDRESS<br>1201 Pennsylvania Ave.NW<br>Suite 300 Washington DC 20004 |
| BY (*Signature*) | BY (*Signature*)<br>NOT REQUIRED | BY (*Signature*) |
| (*Typed name*) | (*Typed name*)<br>NOT REQUIRED | (*Typed name*) |
| DATE | DATE | DATE |

© AIA Document G701 Change Order Electronic Format © 2001 The American Institute of Architects • www.aia.org • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. To report copyright violations of AIA Contract Documents, e-mail The American Institute of Architects' legal counsel. copyright@aia.org. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. expira... ...ument: 3802-c07-arica.aia -- 1/7/2004. AIA License Number 1128754, which expires on 6/27/2004.

EXHIBIT
3

PENGAD 800-631-6989



1201 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20004
202.457.0111  Telephone
202.457.0105  Facsimile

April 6, 2004

Thomas Twigg, Vice President
ARICA Consulting & Contracting
7130–E Kit Kat Road
Elkridge, MD 21075

**Serial No.:**      **3802-397**

**Contract No.:**    **V512(P)C-654; Task Order # 05**

**Project No.:**     **512-172A; Bldg. 10 Replacement/PHP**
                     **VA MD HealthCare System, Parry Point, Maryland**

**RE:**              **Legal name change**

Dear Mr. Twigg:

Our company has filed a legal name change.  Our company name is:

    Goel Services, Inc.
    Dba Goel Construction Services, Inc.

If you have any questions, please do not hesitate to call.

       Sincerely,

       P K Goel
       By direction

EXHIBIT

4

PENGAD 800-631-6989

# HP LaserJet *3330*



Apr-6-2004     7:42AM

| Fax Call Report |
|---|

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|---|---|---|---|---|---|---|---|
| 841 | 4/ 6/2004 | 7:41:23AM | Send | 14107997123 | 0:51 | 1 | OK |



1291 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20004
202.457.0131  Telephone
202.457.0105  Facsimile

April 6, 2004

Thomas Twigg, Vice President
ARICA Consulting & Contracting
7130–E Kit Kat Road
Elkridge, MD 21075

Serial No.:      3802-397

Contract No.:    V512(P)C-654; Task Order # 05

Project No.:     612-172A; Bldg. 10 Replacement/PHP
                 VA MD HealthCare System, Parry Point, Maryland

RE:              Legal name change

Dear Mr. Twigg:

Our company has filed a legal name change.  Our company name is:

    Goel Services, Inc.
    Dba Goel Construction Services, Inc.

If you have any questions, please do not hesitate to call.

                                Sincerely,

                                P K Goel
                                By direction

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
### DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS



# C E R T I F I C A T E

**THIS IS TO CERTIFY** that all applicable provisions of the District of Columbia Business Corporation Act have been complied with and accordingly, this **CERTIFICATE OF AMENDED AUTHORITY** is hereby issued to:

**GOEL CONSTRUCTION SERVICES, INC.**

### Name Changed To

**GOEL SERVICES, INC.**

**IN WITNESS WHEREOF I** have hereunto set my hand and caused the seal of this office to be affixed as of the **15th** day of **April, 2004**.

David Clark
DIRECTOR

John T. Drann
Administrator
Business and Professional Licensing Administration

Patricia E. Grays
Superintendent of Corporations
Corporations Division

Anthony A. Williams
Mayor

EXHIBIT
5
PENGAD 800-631-6989

| DC HOME | ABOUT DC | RESIDENTS | BUSINESS | VISITORS | DC GOVERNMENT | ☆ Kids ☆ |



**WELCOME TO WASHINGTON**
**District of Columbia**



MAYOR
Adrian M. Fenty

## Organization Information

DCRA HOME
SERVICES
INFORMATION
ONLINE SERVICE
REQUESTS

### Online Organization Registration
**Search Registered Organizations**

**Organization Details - Step** [1] [2] [3]
To view another organization from the search, select the **Return to Search Results** button below. You may also **print** the organization details, or start a **new search**. Use the **Back to Main Page button** to continue the registration process.

| Organization | | Registered Agent |
|---|---|---|
| **Organization Name:** | GOEL SERVICES, INC. | C T Corporation System<br>1015 15th Street, N.W. Ste. 1000<br>Washington, DC 20005 |
| **State:** | DE | |
| **Status:** | ACTIVE | |
| **Initial Date of Registration:** | 3/5/2001 | |
| **File No.:** | 210703 | |
| **Organization Type:** | FOREIGN BUSINESS CORPORATION | |

[ << Back to Main Page ]     [ < Return To Search Results ]     [ Print Results ]     [ New Search ]

For more information, contact the Corporations Division at (202) 442-4432 or Ask the Director .

Government of the District of Columbia
Citywide Call Center : (202) 727-1000
TTY/TDD Directory

Telephone Directory by Topic | Agencies |
DC Council | Search | Elected Officials
Feedback | Translation | Accessibility |
Privacy & Security | Terms & Conditions

John A. Wilson Building
1350 Pennsylvania Avenue, NW
Washington, DC 20004



EXHIBIT
6

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                   )
ARICA CONSULTING & CONTRACTING, INC.,              )
                                                   )
                    *Plaintiff*,                   )
                                                   )
        v.                                         )  Civil Action No.:
                                                   )  1:07-cv-01661-EGS
GOEL CONSTRUCTION SERVICES, INC.,                  )  Judge Emmet G. Sullivan
                                                   )
                    *Defendant*.                   )
_____)

**ORDER**

UPON CONSIDERATION of the Defendant's Motion to Set Aside Entry of Default and any opposition thereto, it is this _____ day of _____, 2008, hereby

ORDERED that the Motion to Set Aside Entry of Default is GRANTED;

ORDERED that the Default entered in this matter as to Defendant Goel Construction Services, Inc. is hereby vacated; and it is further

ORDERED that Defendant Goel Services, Inc. shall have 20 days from the date of entry of this Order to file any responsive pleading or motion to the Complaint.


                              _____
                              The Honorable Emmet G. Sullivan
                              Judge, United States District Court
                              for the District of Columbia