UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ARICA CONSULTING & CONTRACTING, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GOEL CONSTRUCTION SERVICES, INC., ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. <br> 1:07-cv-01661-EGS <br> Judge Emmet G. Sullivan |

**OPPOSITION OF PLAINTIFF ARICA CONSULTING & CONTRACTING, INC. TO DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT**

Comes now Plaintiff, Arica Consulting & Contracting, Inc. (Arica), by and through its undersigned counsel, and in Opposition to Defendant's Motion to Set Aside Entry of Default, states as follows:

1.  This Court was correct in entering Default against Defendant, Goel Constructions Services, Inc., aka Goel Services, Inc. (Goel).

2.  The Motion submitted by Goel should be denied because there is no factual or legal basis for this Court to set aside entry of default.

3.  By its own admissions, Goel continued to hold itself out and do business as "Goel Construction Services, Inc." even after it purportedly registered its change of name with the District of Columbia Department of Consumer and Regulatory Affairs on April 15, 2004. See Defendant's Exhibit 4; Business Certificate Information Report as of Sunday, January 27, 2008,

attached hereto as Exhibit A; Supplement Affidavit of Piyush J. Goel dated January 27, 2006, attached hereto as Exhibit B.

4. By its own admissions, Goel continued to hold itself out and do business from its address at 1201 Pennsylvania Avenue, N.W., even after it purportedly changed its address. Defendant's Exhibit 3 and 4; Exhibit A.

5. Arica attempted service of Goel at its place of business at 1201 Pennsylvania Avenue, N.W., on September 5, 2007. In connection with the attempted service, the building manager at that address informed the process server that Goel moved three months earlier and left no forwarding address. Affidavit of Due Diligence, attached hereto as Exhibit C.

6. The process server likewise could not identify or find a registered agent in he District of Columbia for Goel Construction Services, Inc. at 1201 Pennsylvania Avenue, N.W. Alternate service on an authorized representative of Mayor Fenty was proper under D.C. Code § 29-101.12(b).

7. Service on an authorized representative of Mayor Fenty was executed on October 11, 2007. Affidavit of Service, submitted with Affidavit of Default.

8. Because service was proper, this court had jurisdiction over Goel. Goel failed to submit an answer and Arica's claim is for a sum certain.

WHEREFORE, Arica respectfully requests that Goel's Motion to Set Aside Entry of Default be denied.

Respectfully submitted:

ARICA CONSULTING & CONTRACTING, INC.,
By its attorneys:


/s/ Valerie Elizabeth Powell
Eric R. Stanco
(D.C. Bar No. 456896)
Valerie Elizabeth Powell
(D.C. Bar No. 474117)
Stanco & Associates
126 C Street, N.W.
Washington, D.C. 20001
(202) 331-8822
(202) 331-9705 (facsimile)


### CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2008, true copies of the foregoing Motion in Opposition to Defendant's Motion to Set Aside Entry of Default and Memorandum in support thereof, the exhibits thereto, and a proposed Order were served by electronic filing and first-class mail, postage pre-paid, on the following counsel of record:


Paul V. Waters, Esquire
David Hilton Wise, Esquire
WATERS & WISE, PLLC
10565 Fairfax Boulevard, Suite 205
Fairfax, VA 22030
*Counsel for GOEL SERVICES, INC., aka GOEL CONSTRUCTION SERVICES, INC.*

/s/ Valerie Elizabeth Powell
Valerie Elizabeth Powell

# Business Certification Information Report
## as of Sunday, January 27, 2008

The information in this report is only valid as of the date above. This listing is dynamic with new companies being added and existing companies expiring on a regular basis.

## Goel Services, Inc.(formerly Goel Construction Service, Inc.)

| | |
|---|---|
| Description: | Construction, Asbestos Removal, Demolition, Remodeling, Lead Paint Abatement, Insulation, Sewer Studies |
| Principal Owner: | Piyush J. Goel |
| Contact Name: | PJ Goel |
| Address: | 1201 Pennsylvania Avenue, NW, Suite 300, Washington, DC 20004-3140 |
| Phone: | (202) 457-0111 |
| Fax: | (202) 457-0105 |
| Email: | pj.goel@8a.com |
| Website URL: | www.goelconstruction.com |
| Date Established: | 2/27/2001 |
| Organization Type: | Corporation |
| Ward: | 2 |

### Certification Information

| | |
|---|---|
| Expire: | 8/18/2009 |
| CBE Number: | LSDZR00619082009 |
| Preference Points: | 12 (2 for LBE; 3 for SBE; 2 for DBE; 2 for DZE; 5 for ROB; maximum 12) |

### NIGP Codes

| Code | Description |
|---|---|
| 285-42-00 | Insulation Materials and Insulators: Compounds, Varnish, etc. |
| 510-16-00 | Asbestos Covers and Pads |
| 670-12-00 | Grout, Pipe and Sewer |
| 890-64-00 | Sewer Inspection Equipment |
| 909-21-00 | Building Construction, Industrial (Warehouse, etc.) |
| 909-22-00 | Building Construction, Non-Residential (Office Bldg., etc.) |
| 910-38-00 | Insulation and Asbestos Installation, Maintenance, Repair and Removal Services (Includes Inspection and Monitoring) |
| 910-47-00 | Lead Abatement Services |
| 912-00-00 | CONSTRUCTION SERVICES, GENERAL (INCL. MAINTENANCE AND REPAIR SERVICES) |
| 912-40-00 | Demolition Services |
| 918-13-00 | Asbestos Consulting |
| 926-58-00 | Lead and Asbestos Inspection Services |
| 981-84-00 | Water and Sewer Equipment (Including Well Pointing Equipment) Rental or Lease |

### Activity Information

| Type | Percentage of diversity |
|---|---|
| Construction | 100% |

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA f/u/b ARICA CONSULTING & CONTRACTING, INC., <br><br>Plaintiff <br><br>v. <br><br>GREAT AMERICAN INSURANCE CO. <br><br>Defendant | Civil Action No. CCB 05 CV 2430 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUPPLEMENT AFFIDAVIT OF PIYUSH J. GOEL

I, Piyush J. Goel, being duly deposed and sworn, state and affirm under oath as follows:

1. I am over the age of eighteen (18) and am competent to testify to the matters set forth herein.

2. Goel Construction Services, Inc. ("GCSI") maintains its own corporate records, which are separate and distinct from, and have nothing to do with, DCB. See e.g. Exhibit 1 hereto (the Certificate of Incorporation of Goel Construction Services, Inc.), Exhibit 2 hereto (Corporate Resolution electing officers), Exhibit 3 hereto (By-Laws), Exhibit 4 hereto (Certification of name change from "Goel Construction Services, Inc." to "Goel Services, Inc."), Exhibit 5 hereto (the Foreign Corporation Qualification filing with Maryland's Department of Assessments and Taxation), Exhibit 6 hereto (name change filing with Maryland's Department of Assessments and Taxation); Exhibit 7 (Trade Name Registration filing with Maryland's Department of Assessments and Taxation), and Exhibit 8 hereto (Two-Year Report filing for the District of Columbia).

Exhibit B

01/28/2008 21:42 IFAX ERSTANCO@SURETYLAW.COM → ELIZABETH ☒002/004

Case 1:07-cv-01661-EGS   Document 9-3   Filed 01/28/2008   Page 2 of 4
Case 1:05-cv-02430-CCB   Document 20   Filed 01/27/2006   Page 2 of 4

3. GCSI maintains its own bank accounts and financial records, which are separate and distinct from, and have nothing to do with, DCB. See e.g., Exhibit 9 hereto (Goel Construction Services, Inc. Financial Statements with Accompanying Information and Report of Certified Public Accountants December 31, 2002 and 2001, with confidential commercial information redacted), Exhibit 10 hereto (Goel Construction Services, Inc. Financial Statements with Accompanying Information and Report of Certified Public Accountants December 31, 2003, with confidential commercial information redacted), Exhibit 11 hereto (Goel Construction Services, Inc. Financial Statements with Accompanying Information and Report of Certified Public Accountants for the Years Ended December 31, 2004 and 2003, with confidential commercial information redacted).

4. In connection with its work on the Building 10B Project, GCSI maintained its accounting reports regarding payments to subcontractors, which are separate and distinct from and have nothing to do with DCB, see e.g. Exhibit 12 hereto (Job History Detail Report), and GCSI paid those subcontractors from GCSI accounts.

5. The subcontract between Delaware Cornerstone Builders, Inc. ("DCB") and GCSI came about as a result of discussions that I had in late December 2002 with my brother Prabodh K. Goel ("P.K."), who is the president of DCB. GCSI was a relatively new company (formed in 2001), and it did not have any experience on Federal Government construction projects (which is one of the markets in which I had hope for GCSI to be involved). I therefore asked P.K. if he would consider subcontracting to GCSI some of the work on the Building 10B project. Ultimately, DCB subcontracted to GCSI all of the work on the project, except for the mechanical insulation work (which DCB intended to perform with its own forces.)

01/28/2008 21:42 IFAX ERSTANCO@SURETYLAW.COM → ELIZABETH ☒003/004

Case 1:07-cv-01661-EGS   Document 9-3   Filed 01/28/2008   Page 3 of 4
Case 1:05-cv-02430-CCB   Document 20   Filed 01/27/2006   Page 3 of 4

6. The GCSI-Arica Subcontract came about as a result of P.K. having informed me that he had already received a proposal from Arica Consulting & Contracting, LLC ("Arica") for certain of the work. P.K. offered that if GCSI was interested in using Arica for any of that work, he would discuss it with Thomas Twigg, Arica's president. I asked P.K. to do so and told him that if Arica was interested in working on the project as a subcontractor to GCSI it should submit a proposal for doing so. I later received a proposal from Arica and, ultimately, GCSI entered into a Subcontract with Arica. That Subcontract was for all of the work that had been subcontracted to GCSI except for the electrical work and some miscellaneous items of other work.

7. Things were moving pretty quickly during this period and, as P.K. has significantly more experience than I do, I asked P.K. to handle the negotiations of the subcontract with Arica, which he did. Ultimately, however, I reviewed and approved on behalf of GCSI the final version of the GCSI-Arica Subcontract agreement and I authorized P.K. to sign it on behalf of GCSI.

8. For the first few months of this project, I administered the Arica subcontract pretty much on my own (i.e. without much mentoring from P.K.). Later, however, a number of problems arose on the job, and I was having significant difficulty managing Arica as a subcontractor. I therefore asked P.K. to help in that regard and he did so, taking a more active role, particularly in connection with the most difficult issues. During that time, P.K. signed many letters on behalf of GCSI (which I authorized him to do) and also some change orders (for which he was also authorized).

9. Arica was paid for its work on the project via GCSI checks from GCSI bank accounts. See e.g., Exhibit 2 to the Reply Memorandum.

01/28/2008 21:42 IFAX ERSTANCO@SURETYLAW.COM → ELIZABETH ☒004/004

Case 1:07-cv-01661-EGS   Document 9-3   Filed 01/28/2008   Page 4 of 4
Case 1:05-cv-02430-CCB   Document 20   Filed 01/27/2006   Page 4 of 4

10. In order to minimize administrative expenses for the two relatively small companies, DCB and GCSI share staff.

11. I have reviewed the Reply Memorandum filed in this action and all exhibits included therewith. The Reply Memorandum accurately presents the relevant facts, and the exhibits attached thereto, as applicable, reflect true copies of the documents referenced therein.

I SOLEMNLY DECLARE AND AFFIRM UNDER PENALTIES OF PERJURY AND UPON PERSONAL KNOWLEDGE THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: January 27, 2006

Piyush J. Goel

STATE OF MARYLAND      )

COUNTY OF _____ )

Sworn and subscribed to before me this 27th day of January, 2006.

Notary Public _____
[Notary Seal]   My Commission Expires: _____

01/28/2008 21:20 IFAX ERSTANCO@SURETYLAW.COM → ELIZABETH ☒001/004

Case 1:07-cv-01661-EGS   Document 9-4   Filed 01/28/2008   Page 1 of 4
Case 1:05-cv-02430-CCB   Document 20   Filed 01/27/2006   Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>f/u/b ARICA CONSULTING &<br>CONTRACTING, INC., | * * * * | |
| Plaintiff | * * | |
| v. | * * | Civil Action No. CCB 05 CV 2430 |
| GREAT AMERICAN INSURANCE CO. | * * | |
| Defendant | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUPPLEMENT AFFIDAVIT OF PIYUSH J. GOEL

I, Piyush J. Goel, being duly deposed and sworn, state and affirm under oath as follows:

1.  I am over the age of eighteen (18) and am competent to testify to the matters set forth herein.

2.  Goel Construction Services, Inc. ("GCSI") maintains its own corporate records, which are separate and distinct from, and have nothing to do with, DCB. See e.g. Exhibit 1 hereto (the Certificate of Incorporation of Goel Construction Services, Inc.), Exhibit 2 hereto (Corporate Resolution electing officers), Exhibit 3 hereto (By-Laws), Exhibit 4 hereto (Certification of name change from "Goel Construction Services, Inc." to "Goel Services, Inc."), Exhibit 5 hereto (the Foreign Corporation Qualification filing with Maryland's Department of Assessments and Taxation), Exhibit 6 hereto (name change filing with Maryland's Department of Assessments and Taxation); Exhibit 7 (Trade Name Registration filing with Maryland's Department of Assessments and Taxation), and Exhibit 8 hereto (Two-Year Report filing for the District of Columbia).

Exhibit B

01/28/2008 21:20 IFAX ERSTANCO@SURETYLAW.COM → ELIZABETH ☒002/004

Case 1:07-cv-01661-EGS    Document 9-4    Filed 01/28/2008    Page 2 of 4
Case 1:05-cv-02430-CCB    Document 20    Filed 01/27/2006    Page 2 of 4

3. GCSI maintains its own bank accounts and financial records, which are separate and distinct from, and have nothing to do with, DCB. See e.g., Exhibit 9 hereto (Goel Construction Services, Inc. Financial Statements with Accompanying Information and Report of Certified Public Accountants December 31, 2002 and 2001, with confidential commercial information redacted), Exhibit 10 hereto (Goel Construction Services, Inc. Financial Statements with Accompanying Information and Report of Certified Public Accountants December 31, 2003, with confidential commercial information redacted), Exhibit 11 hereto (Goel Construction Services, Inc. Financial Statements with Accompanying Information and Report of Certified Public Accountants for the Years Ended December 31, 2004 and 2003, with confidential commercial information redacted).

4. In connection with its work on the Building 10B Project, GCSI maintained its accounting reports regarding payments to subcontractors, which are separate and distinct from and have nothing to do with DCB, see e.g. Exhibit 12 hereto (Job History Detail Report), and GCSI paid those subcontractors from GCSI accounts.

5. The subcontract between Delaware Cornerstone Builders, Inc. ("DCB") and GCSI came about as a result of discussions that I had in late December 2002 with my brother Prabodh K. Goel ("P.K."), who is the president of DCB. GCSI was a relatively new company (formed in 2001), and it did not have any experience on Federal Government construction projects (which is one of the markets in which I had hope for GCSI to be involved). I therefore asked P.K. if he would consider subcontracting to GCSI some of the work on the Building 10B project. Ultimately, DCB subcontracted to GCSI all of the work on the project, except for the mechanical insulation work (which DCB intended to perform with its own forces.)

01/28/2008 21:20 IFAX ERSTANCO@SURETYLAW.COM → ELIZABETH ☒003/004

Case 1:07-cv-01661-EGS   Document 9-4   Filed 01/28/2008   Page 3 of 4
Case 1:05-cv-02430-CCB   Document 20   Filed 01/27/2006   Page 3 of 4

6.  The GCSI-Arica Subcontract came about as a result of P.K. having informed me that he had already received a proposal from Arica Consulting & Contracting, LLC ("Arica") for certain of the work. P.K. offered that if GCSI was interested in using Arica for any of that work, he would discuss it with Thomas Twigg, Arica's president. I asked P.K. to do so and told him that if Arica was interested in working on the project as a subcontractor to GCSI it should submit a proposal for doing so. I later received a proposal from Arica and, ultimately, GCSI entered into a Subcontract with Arica. That Subcontract was for all of the work that had been subcontracted to GCSI except for the electrical work and some miscellaneous items of other work.

7.  Things were moving pretty quickly during this period and, as P.K. has significantly more experience than I do, I asked P.K. to handle the negotiations of the subcontract with Arica, which he did. Ultimately, however, I reviewed and approved on behalf of GCSI the final version of the GCSI-Arica Subcontract agreement and I authorized P.K. to sign it on behalf of GCSI.

8.  For the first few months of this project, I administered the Arica subcontract pretty much on my own (i.e. without much mentoring from P.K.). Later, however, a number of problems arose on the job, and I was having significant difficulty managing Arica as a subcontractor. I therefore asked P.K. to help in that regard and he did so, taking a more active role, particularly in connection with the most difficult issues. During that time, P.K. signed many letters on behalf of GCSI (which I authorized him to do) and also some change orders (for which he was also authorized).

9.  Arica was paid for its work on the project via GCSI checks from GCSI bank accounts. See e.g., Exhibit 2 to the Reply Memorandum.

01/28/2008 21:20 IFAX ERSTANCO@SURETYLAW.COM → ELIZABETH ☑004/004

Case 1:07-cv-01661-EGS   Document 9-4   Filed 01/28/2008   Page 4 of 4
Case 1:05-cv-02430-CCB   Document 20   Filed 01/27/2006   Page 4 of 4

10. In order to minimize administrative expenses for the two relatively small companies, DCB and GCSI share staff.

11. I have reviewed the Reply Memorandum filed in this action and all exhibits included therewith. The Reply Memorandum accurately presents the relevant facts, and the exhibits attached thereto, as applicable, reflect true copies of the documents referenced therein.

I SOLEMNLY DECLARE AND AFFIRM UNDER PENALTIES OF PERJURY AND UPON PERSONAL KNOWLEDGE THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: _January 27, 2006_          _____
                                                Piyush J. Goel

STATE OF MARYLAND    )

COUNTY OF _St. Mary's_    )

Sworn and subscribed to before me this 27th day of January, 2006.

Notary Public _____
[Notary Seal]     My Commission Expires: _May 4, 2008_

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARICA CONSULTING & CONTRACTING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOEL CONSTRUCTION SERVICES, INC.,<br><br>Defendant. | Civil Action No.<br>1:07-cv-01661-EGS<br>Judge Emmet G. Sullivan |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT**

**STATEMENT OF FACTS**

1. The United States Department of Veterans Affairs awarded Delaware Cornerstone Builders, Inc. (DCB) contract numbered V512(P)C-654, Task Order 5 (Contract) in connection with a project commonly known as Building 10 Replacement/PHP VA MD HealthCare System, located at Perry Point, Maryland (Project).

2. Thereafter, on or about December 29, 2002, DCB, as prime contractor, entered into a subcontract agreement with Goel,[1] by the terms of which Goel was to perform some of the work included in the Contract.

3. In turn, on or about January 10, 2003, Goel executed a subcontract agreement with Arica (Subcontract), by the terms of which Arica was to perform much or all of the work required under Goel's agreement with DCB, including the demolition of an existing building and construction of a new building in its place, exclusive of electrical, plumbing and mechanical, for

---

[1] "Goel" shall be used throughout to refer to Goel Construction Services, Inc. and Goel Services, Inc.

the subcontract price of $1,072,285. Subcontract, Defendant's Exhibit 1.

4. During the course of construction on the Project, Goel directed Arica to furnish additional work, labor and material to the Project, net of appropriate deductive changes, totaling $49,013.23.

5. Arica has substantially completed its work in strict conformity with the plans and specifications for the Project.

6. However, Arica has only received a total of $894,145.20, and, without justification, Goel has failed to pay Arica the remaining earned contract balances due of $148,139.80.

12. In addition, Goel has failed or refused to pay for approved change orders totaling $24,511.33.

13. Goel has also failed or refused to approve and pay for work performed by Arica at Goel's direction in the sum amount of $24,501.90.

14. By its own admissions, Goel continued to hold itself out and do business as "Goel Construction Services, Inc." even after it purportedly registered its change of name with the District of Columbia Department of Consumer and Regulatory Affairs on April 15, 2004. See Defendant's Exhibit 4; Business Certificate Information Report as of Sunday, January 27, 2008, attached hereto as Exhibit A; Supplement Affidavit of Piyush J. Goel, January 27, 2006, attached hereto as Exhibit B.

15. By its own admissions, Goel continued to hold itself out as doing business from its address at 1201 Pennsylvania Avenue, N.W., even after it purportedly changed its address. Defendant's Exhibits 3 and 4; Exhibit A.

16. Arica attempted service of Goel at its place of business at 1201 Pennsylvania

Avenue, N.W., on September 5, 2007. In connection with the attempted service, the building manager at that address informed the process server that Goel moved three months earlier and left no forwarding address. Affidavit of Due Diligence, attached hereto as Exhibit C.

17. The process server likewise could not identify or find a registered agent in the District of Columbia for Goel Construction Services at 1201 Pennsylvania Avenue, N.W.

18. On October 11, 2007, Arica executed service on an authorized representative of the District of Columbia Corporations Division on behalf of the Honorable Adrian Fenty, Mayor of the District of Columbia, pursuant to D.C. Code § 29-101.12(b), the Mayor thus being an agent of Goel. Affidavit in Support of Default.

19. On January 14, 2008, the Clerk of the Court entered a default against Goel for failure to plead or defend the action.

## STANDARD OF REVIEW

Under Fed.R.Civ.P. 55(c), the court may set aside an entry of default for good cause shown. The disposition of motions made under Rules 55(c) and 60(b) is a matter which lies largely within the discretion of the trial judge. *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr.*, 383 F.2d 249, 251 (4th Cir. 1967).

## ARGUMENT

The default procedure offers a useful remedy to a good faith litigant who is confronted by an obstructionist adversary. *Frank Keevan & Son, Inc. v. Callier Steel Pipe & Tube, Inc.*, 107 F.R.D. 665, 669 (D.C.Fla.. 1985). When the party in default engages in delaying or obstructing tactics or willfully ignores the processes of the court, a district judge will generally be reluctant to grant a motion to set aside the entry. *Wilcox v. Triple D Corp.*, 78 F.R.D. 5, 7 (D.C.Va. 1978). Where a party made deliberate attempt to evade service, the entry of a default judgment would

not be set aside. *Victoria's Secret Store v. Arco Equip.Co.,* 194 F.Supp.2d 704 (D.C. Ohio 2002). These cases indicate that the good or bad faith of the parties may be one of the most important factors in deciding motions under Rule 55(c).

I.   **Service on Goel was proper.**

Goel's claim that it was not served is spurious. The documents Goel submits in support of its purported name change are themselves internally inconsistent. Those documents others generated by Goel show that Goel continues to do business under the name "Goel Construction Services, Inc." and continues to hold itself out as doing business at 1201 Pennsylvania Avenue well.

For example, the Change order dated September 8, 2003 in which Goel attempted to notify Arica of its change of address requests that all correspondence by ailed to Goel Services, Inc., at a Hyattsville, Maryland address. But the same document also lists Goel's address as 1201 Pennsylvania Avenue, N.W. Defendant's Exhibit 3. Likewise, Goel's letter to Thomas Twigg dated April 6, 2004 states that its name is "Goel Services, Inc. Dba Goel Construction Services, Inc." Again, this letter lists Goel's address as 1201 Pennsylvania Avenue, which is inconsistent with its instructions contained in the Change Order. Defendant's exhibit 4.

In January 2006, Goel's President continued to refer to his company as Goel Construction Services, Inc. Exhibit B.

To this very day, Goel continues to list its business address as 1201 Pennsylvania Avenue, as demonstrated by the entry for Goel in the District of Columbia's database for local and small business. Exhibit A.

Arica exercised due diligence by attempting first to serve its Complaint on Goel at 1201 Pennsylvania Avenue. Exhibit C. When service at that address failed, the process server was enable to find registration for Goel Construction Services, Inc. in the District of Columbia Corporations Division. Id. Therefore, Arica served Goel under the procedure set forth in D.C. Code § 29-101.12(b), which provides for alternate service on the mayor of the District of Columbia to cover precisely this situation. Service was proper and therefore, Goel's argument that this court lacks personal jurisdiction lacks merit.

**II.     Setting aside the entry of default will prejudice Arica.**

Arica has a contractual right to payment for work performed under the contract. Arica negotiated payment in good faith with Goel for a year after completion of its work on the project before filing the Complaint. Arica's prejudice is that its right to receive payment has not been realized, and Goel's effort to evade service has prolonged the period in which Arica has suffered its loss.

**III.    Goel cannot rely on meritorious defenses to Arica's underlying claim.**

Goel falsely and misleading asserts that the Contract contains terms which make payment from the Owner to Goel a condition precedent to payment to the subcontractor. To the contrary, the Contract clauses Goel cites provide for progress payments to be paid according to a specified formula in the event that the Owner does not pay Goel:

> 11.3 Provided an application for payment is received by the Contractor not later than the 26th day of a month, the Contractor shall include the Subcontractor's Work covered by that application for payment which the Contractor is entitled to submit to the Architect. The contractor shall pay the Subcontractor each progress payment within three working days after the Contractor receives payment from the Owner. If the Architect does not issue a certificate for payment or the Contractor does not receive payment for any cause which is not the fault of the Subcontractor, the Contractor shall pay the Subcontractor, on demand, a progress payment computed as provided in Paragraphs 11.7, 11.8, and 11.9.

\* \* \* \* \*

    12.1. Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirement of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.

These clauses by no means unambiguously shifts the risk of the Owner's non-payment from the Contractor to the Subcontractor. They do not contain language that makes payment by the owner to Goel the only precondition to Goel's payment to Arica, as Goel would have the court believe. To the contrary, on its face and by its clear and unambiguous language, the Subcontract provides for progress payments in the event of Owner nonpayment.

Furthermore, Goel makes the wholly unsupported claim that deficiencies in Arica's work are responsible for nonpayment by the owner. P.J. Goel fails to allege in his Affidavit in Support of Motion to Set Aside Entry of Default that Arica's work was in any way deficient. This assertion is a blatant fabrication that was concocted for the obvious and sole purpose of avoiding the consequences of Goel's deliberate failure to comply with the orderly processes of the court.

Goel's contention that Arica's Complaint is barred by the arbitration clause in the Contract is likewise without merit. Arica was compelled to file a Complaint to prevent the expiration of the applicable period of limitations. Goel incorrectly asserts that the arbitration and mediation clauses require the dismissal of Arica's Complaint, when in fact the most relief to which Goel could be entitled is a stay of litigation pending arbitration and mediation.

Goel's argument that venue is "more proper" in Maryland is irrelevant. As stated in the

Complaint, venue in the District of Columbia is appropriate under 40 U.S.C. § 3133 (b) because Goel's principal place of business is in the District of Columbia. The fact that the site of the Project is in Maryland in no way diminishes the propriety of the current venue.

## CONCLUSION

No facts or law will operate to relieve Goel from the logical consequences of its own written and oral admissions regarding its name and location. Arica properly served Goel through the Mayor's authorized representative, and Goel's failure to allege a single meritorious defense, together with the continuing prejudice to Arica's right to payment, warrant denial of Arica's Motion to Set aside Entry of Default.

Respectfully submitted:

ARICA CONSULTING & CONTRACTING, INC.,

By its attorneys:

　/s/ Valerie Elizabeth Powell
Eric R. Stanco
(DC Bar No. 456896)
Valerie Elizabeth Powell
(DC Bar No. 474117)
Stanco & Associates
126 C Street, N.W.
Washington, D.C. 20001
(202) 331-8822
(202) 331-9705 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARICA CONSULTING & CONTRACTING, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GOEL CONSTRUCTION SERVICES, INC., ) <br> ) <br> Defendant. ) | Civil Action No. <br> 1:07-cv-01661-EGS <br> Judge Emmet G. Sullivan |

ORDER

UPON CONSIDERATION of the Defendant's Motion to Set Aside Entry of Default, Plaintiff's opposition thereto, and the record, it is this _____ day of _____, 2008, hereby

ORDERED that the Motion to Set Aside Entry of Default is DENIED.

The Honorable Emmet G. Sullivan<br>
Judge, United States District Court<br>
  for the District of Columbia