# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| ARICA CONSULTING & CONTRACTING, INC., | ) |
|  | ) |
| *Plaintiff*, | ) |
|  | ) Civil Action No.: |
| v. | ) 1:07-cv-01661-EGS |
|  | ) |
| GOEL CONSTRUCTION SERVICES, INC., | ) Judge Emmet G. Sullivan |
|  | ) |
| *Defendant*. | ) |

_____)

## <u>GOEL SERVICES, INC.'S MOTION TO DISMISS COMPLAINT</u>

COMES NOW Defendant Goel Services, Inc., f/k/a Goel Construction Services, Inc. ("Goel"), by counsel, and pursuant to Fed.R.Civ.P 12(b)(6), respectfully requests this Court to dismiss Plaintiff's Complaint, or, in the alternative, stay Plaintiff's Complaint pending the exhaustion of all administrative remedies, and for such other and further relief as this Court deems equitable and just.

Date:   May 12, 2008

Respectfully submitted,

GOEL SERVICES, INC., by counsel,

WATERS & WISE, PLLC

_/s/  Paul V. Waters_____
Paul V. Waters, D.C. Bar No. 368970
paulwaters@waterswise.com
David Hilton Wise, D.C. Bar No. 427796
davidwise@waterswise.com
3243 P Street, N.W.
Washington, DC 20007
Tel:    (202) 338-1338
Fax:    (202) 338-3888

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| ARICA CONSULTING & CONTRACTING, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| | ) Civil Action No.: |
| v. | ) 1:07-cv-01661-EGS |
| | ) |
| GOEL CONSTRUCTION SERVICES, INC., | ) Judge Emmet G. Sullivan |
| | ) |
| *Defendant.* | ) |

---

**MEMORANDUM IN SUPPORT OF**
**GOEL SERVICES, INC.'S MOTION TO DISMISS COMPLAINT**

Defendant Goel Services, Inc., f/k/a Goel Construction Services, Inc. ("Goel"), by counsel, in support of its Fed.R.Civ.P. 12(b)(6) Motion to Dismiss Complaint, states as follows:

**BACKGROUND TO ARICA'S CLAIM AGAINST GOEL**

Goel entered into a contract to perform certain work on a construction project for the U.S. Department of Veterans Affairs ("VA" or "Owner") known as the "Building 10 Replacement/Partial Hospitalization Program at VA Medical HealthCare Systems Perry Point, MD, Project #512-172" (the "Project"). Affidavit in Support of Goel Services, Inc.'s Motion to Dismiss ("Affidavit"), ¶ 3. On January 10, 2003, Goel and Arica Consulting and Contracting, Inc. ("Arica") entered into a subcontract agreement whereby Arica agreed to perform certain portions of Goel's work on the Project (the "Subcontract"). Affidavit, ¶ 4; Exhibit 1 to the Affidavit.

The Subcontract provided that:

 *1.1 The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein... These form the*

*Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral.*

*2.1 The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and to the extent the provisions of the... Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such documents, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract. Where a provision of such documents is inconsistent with a provision of this Agreement, this Agreement shall govern. ...*

*4.1.5 The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Prime Contract. The Architect's (Owner and/or Construction Manager) decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor...*

Exhibit 1 to the Affidavit.

In addition, the Subcontract provided that Goel shall not be responsible to pay Arica until three working days after Goel receives payment from the Owner and the progress payments shall not include amounts which are related to Arica's Work for which the Architect has withheld or nullified payment, in whole or in part. Exhibit 1 to the Affidavit, ¶¶ 11.3 & 11.7.4. Further, Goel shall not be responsible to make final payment to Arica until Arica's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering Arica's completed Work and Goel has received payment for that work. Exhibit 1 to the Affidavit, ¶ 12.1.

Arica's Complaint includes claims for an alleged contract balance of $148,149.80, alleged approved changes of $24,511.33, and alleged unapproved changes of $24,501.90. Complaint, ¶¶ 11-13.  The VA has not approved and accepted Arica's work on the Project. Affidavit, ¶ 6.  In addition, Arica did not complete and warranty its work on the Project. Affidavit, ¶ 7.  As a result, Goel has not received payment for the claims that Arica is seeking in its Complaint and no amount is due Arica under the terms of the Subcontract.  Affidavit, ¶¶ 8-9.

## STANDARD OF REVIEW

"To survive a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must make sufficiently detailed factually allegations in his complaint 'to raise a right to relief above the speculative level.'"  *Eleson v. United States*, 518 F.Supp.2d 279, 282 (D.D.C. 2007) (*quoting Bell Atlantic Corp. v. Twombly,* ___ U.S. ___, ___, 127 S.Ct. 1955, 1965, 167 L.E.2d 929 (2007)).  "In evaluating a Rule 12(b)(6) motion, the Court must accept as true all of the factual allegations contained in the Complaint and grant the plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Eleson*, 518 F.Supp.2d at 282 (*internal citations omitted*). "However, 'a plaintiff's obligation to provide the grounds of his entitled to relief [in his complaint] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Eleson*, 518 F.Supp.2d at 282 (*quoting Twombly*, 127 S.Ct. at 1965)).

When matters outside the pleading are presented to and not excluded by the court, a motion to dismiss shall be treated as one for summary judgment.  *Fraternal Order of Police Dept. of Corr. Labor Comm. v. Williams*, 375 F.3d 1141, 1144 (D.C.Cir. 2004) (*quoting Yates v.*

*Dist. of Columbia*, 324 F.3d 724, 725 (D.C.Cir. 2003)).  To the extent appropriate, then, Goel respectfully requests dismissal of Arica's Complaint on such grounds as well.  Fed.R.Civ.P. 56.

Further, it is established that district courts enjoy the inherent power to control their docket and grant discretionary stays.  *McSurely v. McClellan,* 426 F.2d 664, 671 (D.C.Cir. 1970) (*citing Landis v. N. Am. Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)).  Thus, in the alternative, Goel respectfully requests that in the interest of judicial economy and consistency this Court exercise its discretion and stay Arica's claim in this Court until such time as Arica's claims have been finally determined by the VA under the Contract Disputes Act, and any appeals rights have been exhausted.

## ARGUMENT

### I.   Arica's breach of contract claim is barred because Goel has not received payment from the Owner for Arica's work.

Count One of Arica's Complaint purports to state a cause of action for breach of contract for Goel's alleged failure to pay Arica for its work on the Project.  Under the terms of the Subcontract, Arica is not entitled to payment from Goel until Goel has received payment for Arica's work.  Goel has not received payment for the claims that Arica is seeking in its Complaint.  Therefore, no payment is due Arica.

It is undisputed that Goel has not been paid for Arica's work.  Thus, Count One is barred and should be dismissed as a matter of law.

### II.   Arica's quasi-contract claim is barred by the existence of an express contract between Arica and Goel.

Count Two of Arica's Complaint purports to state a cause of action for quasi-contract recovery for Goel's alleged failure to pay Arica for its work on the Project.  Recovery in quasi-contract, or unjust enrichment, is only possible in the absence of an express contract.  *U.S. ex rel.*

*Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 247 (1996) (*citing Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C.Cir. 1973)); *see also Mogavero v. Silverstein*, 142 Md.App. 259, 275-276, 790 A.2d 43, 52 (2002) (*citing Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766, 775, 471 A.2d 1121 (1984); *County Comms. of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94-95, 747 A.2d 600 (2000)).

It is undisputed that there is an express contract between Goel and Arica for the Project. Complaint, ¶ 8; SOF, ¶ 2.  Therefore, Count Two is barred and should be dismissed as a matter of law.

### III.    Arica's Complaint is barred because Arica has failed to exhaust administrative remedies prior to instituting this lawsuit.

Arica has agreed to be bound to Goel in the same way that Goel is bound to the Owner and the Subcontract directly incorporates the provisions of the Prime Contract.  Exhibit 1 to the Affidavit, ¶ 2.1.

Arica's Complaint is barred because Arica has failed to exhaust administrative remedies. *Eleson,* 518 F.Supp.2d at 283 ("as plaintiff has failed to exhaust her administrative remedies, a mandatory prerequisite to sue, the Court must dismiss plaintiff's claim…"); *Norment Sec. Group, Inc. v. Travelers Cas. & Ins. Co,* 505 F.Supp.2d 97, 105 (D.D.C. 2007) (*quoting Seal & Co., Inc. v. A.S. McGaughan Co., Inc.,* 907 F.2d 450, 455 (4th Cir. 1990)) ("The court concluded that the parties were "contractually bound to exhaust the administrative procedures available to them and consequently, that the district court erred when it denied [defendant's] motion to stay the proceedings pending the exhaustion of those procedures.")

It is undisputed that Arica has failed to exhaust administrative remedies prior to filing its Complaint.  Therefore, the Complaint is barred and should be dismissed as a matter of law.

## <u>CONCLUSION</u>

WHEREFORE, Goel Services, Inc. respectfully requests this Court to dismiss Arica's Complaint, or, in the alternative, stay Arica's Complaint pending the exhaustion of all administrative remedies and for such other and further relief as this Court deems equitable and just.

Date:   May 12, 2008

Respectfully submitted,

GOEL SERVICES, INC., by counsel,

WATERS & WISE, PLLC

 /s/  Paul V. Waters_____
Paul V. Waters, D.C. Bar No. 368970
paulwaters@waterswise.com
David Hilton Wise, D.C. Bar No. 427796
davidwise@waterswise.com
3243 P Street, N.W.
Washington, DC 20007
Tel:     (202) 338-1338
Fax:     (202) 338-3888

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARICA CONSULTING & CONTRACTING, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) 1:07-cv-01661-EGS |
| GOEL CONSTRUCTION SERVICES, INC., | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

## AFFIDAVIT IN SUPPORT OF GOEL'S MOTION TO DISMISS COMPLAINT

1.    My name is Piyush J. Goel.  I am over eighteen years of age.  I am fully competent to make this Affidavit and I have personal knowledge of the facts stated in the Affidavit.

2.    I am currently employed as President of Goel Services, Inc. ("Goel").  In that role, my duties include contract negotiations and oversight of projects and project management.

3.    Goel entered into a contract to perform work on a construction project for the U.S. Department of Veterans Affairs ("VA") known as the "Building 10 Replacement/Partial Hospitalization Program at VA Medical HealthCare Systems Perry Point, MD, Project #512-172" project (the "Project").

4.    On January 10, 2003, Goel Construction Services, Inc. and Arica Consulting & Contracting ("Arica") entered into a subcontract agreement whereby Arica agreed to perform certain portions of the work on the Project.  A true copy of the subcontract agreement is attached hereto as Exhibit 1.

5.      I am personally familiar with the facts surrounding the work of the Project. I was responsible for overseeing Goel's performance of its work on the Project and that of its subcontractors, including, but not limited to, Arica Consulting and Contracting, Inc.

6.      The VA has not approved and accepted Arica's work on the Project.

7.      Arica did not complete and warranty its work on the Project.

8.      On September 20, 2007, Arica commenced the present lawsuit against Goel seeking damages in the amount of $197,153.03. I have reviewed Arica's Complaint and the amounts that Arica is claiming are for work that has not been approved and accepted by the VA and for which Goel has not received payment.

9.      No payment is due Arica for its work on the Project from Goel.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 12, 2008.

Piyush J. Goel



# Standard Form of Agreement Between Contractor and Subcontractor

### AIA Document A401 - 1997
### 1997 Edition - Electronic Format

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.

Copyright 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

**AGREEMENT** made as of the 10th day of January in the year 2003
*(In words, indicate day, month and year)*

**BETWEEN** the ~~Owner:~~Contractor:
*(Name, address and other information)*
Goel Construction Services
1201 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20004

and the Subcontractor:
*(Name, address and other information)*
Arica Consulting & Contracting
12545 Frederick Road
West Friendship, MD 21794

The Contractor has made a contract for construction dated

With the Owner:
*(Name, address and other information)*
Department of Veterans Affairs
Contracting Division

© AIA DOCUMENT A401 - CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format A401-1997
1

Exhibit 1 to the Affidavit
in Support of Goel's Motion
to Dismiss.  1:07-cv-01661-EGS

PK 1/17

Building 101
Perry Point, MD 21902
Contract number:            V512(P)C-654    t.o. #05        DCB Job Number            3802

For the following Project: Building 10 Replacement/Partial Hospitalization Program at VA Medical HealthCare Systems
Perry Point, MD.
Project# 512-172. Obligation/PO 512-X37001
GCS Job # 3802
:
*(Include detailed description of Project, location and address)*

which Contract is hereinafter referred to as the Prime Contract and which provides for the furnishing of labor, materials, equipment and services in connection with the construction of the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner and Contractor (from which compensation amounts may be deleted) and the other Contract Documents enumerated therein has been made available to the Subcontractor.

The Architect for the Project is:
*(Name, address and other information)*
Polt Design Group
15 East Churchville Road
Suite 102A
Bel Air, MD 21014

The Contractor and the Subcontractor agree as follows

## ARTICLE 1 THE SUBCONTRACT DOCUMENTS

**1.1** The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the Agreement between the Owner and Contractor, whether before or after the execution of this Agreement; (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Agreement, appears in Article 16.

**1.2** Except to the extent of a conflict with a specific term or condition contained in the Subcontract Documents, the General Conditions governing this Subcontract shall be the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**1.3** The Subcontract may be amended or modified only by a Modification. The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and the Subcontractor, (2) between the Owner and the Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor.

**1.4** The Subcontractor shall be furnished copies of the Subcontract Documents upon request, but the Contractor may charge the Subcontractor for the reasonable cost of reproduction of more than three (3) copies.

## ARTICLE 2 MUTUAL RIGHTS AND RESPONSIBILITIES

**2.1** The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of the edition of AIA Document A201 current as of the date of this Agreement apply to this Agreement pursuant to Paragraph 1.2 and provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format A401-1997
2

PK
2117

documents, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract. Where a provision of such documents is inconsistent with a provision of this Agreement, this Agreement shall govern.

**2.2** The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor, assuming toward each other all obligations and responsibilities which the Contractor and Subcontractor assume toward each other and having the benefit of all rights, remedies and redress each against the other which the Contractor and Subcontractor have by virtue of the provisions of this Agreement.

## ARTICLE 3 CONTRACTOR
### 3.1 SERVICES PROVIDED BY THE CONTRACTOR
**3.1.1** The Contractor shall cooperate with the Subcontractor in scheduling and performing the Contractor's Work to avoid conflicts or interference in the Subcontractor's Work and shall expedite written responses to submittals made by the Subcontractor in accordance with Paragraph 4.1 and Article 5. As soon as practicable after execution of this Agreement, the Contractor shall provide the Subcontractor copies of the Contractor's construction schedule and schedule of submittals, together with such additional scheduling details as will enable the Subcontractor to plan and perform the Subcontractor's Work properly. The Subcontractor shall be notified promptly of subsequent changes in the construction and submittal schedules and additional scheduling details.

**3.1.2** The Contractor shall provide suitable areas for storage of the Subcontractor's materials and equipment during the course of the Work. Additional costs to the Subcontractor resulting from relocation of such facilities at the direction of the Contractor, except as previously agreed upon, shall be reimbursed by the Contractor.

**3.1.3** Except as provided in Article 14, the Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms.

### 3.2 COMMUNICATIONS
**3.2.1** The Contractor shall promptly make available to the Subcontractor information, including information received from the Owner, which affects this Subcontract and which becomes available to the Contractor subsequent to execution of this Subcontract.

**3.2.2** The Contractor shall not give instructions or orders directly to the Subcontractor's employees or to the Subcontractor's Sub-subcontractors or material suppliers unless such persons are designated as authorized representatives of the Subcontractor.

**3.2.3** The Contractor shall permit the Subcontractor to request directly from the Architect information regarding the percentages of completion and the amount certified on account of Work done by the Subcontractor.

**3.2.4** If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Contractor, a subcontractor or anyone directly or indirectly employed by them (other than the Subcontractor), the Contractor shall, prior to harmful exposure of the Subcontractor's employees to such substance, give written notice of the chemical composition thereof to the Subcontractor in sufficient detail and time to permit the Subcontractor's compliance with such laws.

**3.2.5** The Contractor shall furnish to the Subcontractor within 30 days after receipt of a written request, or earlier if so required by law, information necessary and relevant for the Subcontractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property, usually referred to as the site, on which the Project is located and the Owner's interest therein.

**3.2.6** If the Contractor asserts or defends a claim against the Owner which relates to the Work of the Subcontractor, the Contractor shall make available to the Subcontractor information relating to that portion of the claim which relates to the Work of the Subcontractor.

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

PK
3/17

## 3.3 CLAIMS BY THE CONTRACTOR

**3.3.1**    Liquidated damages for delay, if provided for in Paragraph 9.3 of this Agreement, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor or any person or entity for whose acts the Subcontractor may be liable, and in no case for delays or causes arising outside the scope of this Subcontract.

**3.3.2**    The Contractor's claims for services or materials provided the Subcontractor shall require:

.1    ~~seven~~ two days' prior written notice except in an emergency;

.2    written compilations to the Subcontractor of services and materials provided and charges for such services and materials no later than the fifteenth day of the following month.

## 3.4 CONTRACTOR'S REMEDIES

**3.4.1**    If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within ~~three~~ two working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after ~~three~~ one day ~~days~~ following receipt by the Subcontractor of an additional written notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor.

## ARTICLE 4   SUBCONTRACTOR
## 4.1 EXECUTION AND PROGRESS OF THE WORK

**4.1.1**    The Subcontractor shall supervise and direct the Subcontractor's Work, and shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces.

**4.1.2**    The Subcontractor shall promptly submit Shop Drawings, Product Data, Samples and similar submittals required by the Subcontract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Contractor or other subcontractors. Nine sets of submittals (submittals include, but are not limited to, shop drawings, product data, samples, etc) are required for this project.  If less than nine (9) sets of submittals are supplied, Contractor may deduct reproduction costs unilaterally.

**4.1.3**    The Subcontractor shall submit to the Contractor a schedule of values allocated to the various parts of the Work of this Subcontract, aggregating the Subcontract Sum, made out in such detail as the Contractor and Subcontractor may agree upon or as required by the Owner, and supported by such evidence as the Contractor may require. In applying for payment, the Subcontractor shall submit statements based upon this schedule.

**4.1.4**    The Subcontractor shall furnish to the Contractor periodic progress reports on the Work of this Subcontract as mutually agreed, including information on the status of materials and equipment which may be in the course of preparation, manufacture or transit.

**4.1.5**    The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Prime Contract. The Architect's (Owner and/or Construction Manager)decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract.

**4.1.6**    The Subcontractor shall pay for all materials, equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

**4.1.7**    The Subcontractor shall take necessary precautions to protect properly the Work of other subcontractors from damage caused by operations under this Subcontract.

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

*PK 4/17*

**4.1.8**    The Subcontractor shall cooperate with the Contractor, other subcontractors and the Owner's own forces whose Work might interfere with the Subcontractor's Work. The Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, if required by the Prime Contract, specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, other subcontractors or the Owner's own forces.

## 4.2 LAWS, PERMITS, FEES AND NOTICES
**4.2.1**    The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's Work, the furnishing of which is required of the Contractor by the Prime Contract.

**4.2.2**    The Subcontractor shall comply with Federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts insofar as applicable to the performance of this Subcontract.

## 4.3 SAFETY PRECAUTIONS AND PROCEDURES
**4.3.1**    The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within three days an injury to an employee or agent of the Subcontractor which occurred at the site.

**4.3.2**    If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Subcontractor, the Subcontractor's Sub-subcontractors or anyone directly or indirectly employed by them, the Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to the Contractor in sufficient detail and time to permit compliance with such laws by the Contractor, other subcontractors and other employers on the site.

**4.3.3**    If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Subcontractor, the Subcontractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Contractor in writing. When the material or substance has been rendered harmless, the Subcontractor's Work in the affected area shall resume upon written agreement of the Contractor and Subcontractor. The Subcontract Time shall be extended appropriately and the Subcontract Sum shall be increased in the amount of the Subcontractor's reasonable additional costs of demobilization, delay and remobilization, which adjustments shall be accomplished as provided in Article 5 of this Agreement.

**4.3.4**    To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Subcontractor, the Subcontractor's Sub-subcontractors, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 4.3.3 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

## 4.4 CLEANING UP
**4.4.1**    The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.

**4.4.2**    As provided under Subparagraph 3.3.2, if the Subcontractor fails to clean up as provided in the Subcontract Documents, the Contractor may charge the Subcontractor for the Subcontractor's appropriate share of cleanup costs.

## 4.5 WARRANTY
**4.5.1**    The Subcontractor warrants to the Owner, Architect and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the Work

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

PK
5/17

of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Subcontract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Subcontractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Subcontractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents.

## 4.6 INDEMNIFICATION

**4.6.1**    To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

**4.6.2**    In claims against any person or entity indemnified under this Paragraph 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 4.6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

## 4.7 REMEDIES FOR NONPAYMENT

**4.7.1**    If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven days from the time payment should be made as provided in this Agreement, the Subcontractor may, without prejudice to any other available remedies, upon seven additional days' written notice to the Contractor, stop the Work of this Subcontract until payment of the amount owing has been received. The Subcontract Sum shall, by appropriate adjustment, be increased by the amount of the Subcontractor's reasonable costs of demobilization, delay and remobilization.

## ARTICLE 5 CHANGES IN THE WORK

**5.1** The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification. Unless otherwise directed by the Contractor, the Subcontractor shall not thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the Prime Contract.

**5.2** The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

**5.3** The Subcontractor shall make all claims promptly to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

Insert A: 5.4    The Contractor may at any time direct (in writing) the Subcontractor to perform extra work or changes under the subcontract.  Only extra work authorized by the contractor as an extra or change order shall be paid by the

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.



contractor. If the extra work direction does not originate from the Owner's direction and their is no prior agreement on price, the Subcontractor shall be paid the actual direct costs of said work plus ten (10%) percent for overhead and ten (10%) percent for profit for all overhead, profit, supervision, and small tools which will constitute the entire amount due the Subcontractor for extra work, including but not limited to any impact or delay effect.

## ARTICLE 6  MEDIATION AND ARBITRATION
### 6.1 MEDIATION

**6.1.1**    Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

**6.1.2**    The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**6.1.3**    The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

### 6.2 ARBITRATION

**6.2.1**    Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1.

**6.2.2**    Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.

**6.2.3**    A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

**6.2.4**    **Limitation on Consolidation or Joinder.** Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**6.2.5**    **Claims and Timely Assertion of Claims.** The party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded.

**6.2.6**    **Judgment on Final Award.** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7  TERMINATION, SUSPENSION OR ASSIGNMENT OF THE SUBCONTRACT

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format  A401-1997

7

PLC
7/17

## 7.1 TERMINATION BY THE SUBCONTRACTOR

**7.1.1** The Subcontractor may terminate the Subcontract for the same reasons and under the same circumstances and procedures with respect to the Contractor as the Contractor may terminate with respect to the Owner under the Prime Contract, or for nonpayment of amounts due under this Subcontract for 60 days or longer. In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract with the Subcontractor, the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

## 7.2 TERMINATION BY THE CONTRACTOR

**7.2.1** If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within ~~seven~~ three days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after ~~seven~~ three days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient. If the unpaid balance of the Subcontract Sum exceeds the expense of finishing the Subcontractor's Work and other damages incurred by the Contractor and not expressly waived, such excess shall be paid to the Subcontractor. If such expense and damages exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor of actual direct cost.

**7.2.2** If the Owner/Contractor terminates the Contract for the Owner's/Contractor's convenience, the Contractor shall deliver written notice to the Subcontractor. The Contractor has the right to terminate the Subcontract for Contractor's convenience.

**7.2.3** Upon receipt of written notice of termination, the Subcontractor shall:

.1    cease operations as directed by the Contractor in the notice;

.2    take actions necessary, or that the Contractor may direct, for the protection and preservation of the Work; and

.3    except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing Sub-subcontracts and purchase orders and enter into no further Sub-subcontracts and purchase orders.

**7.2.4** In case of such termination for the Owner's/Contractor's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work ~~not~~ executed. Reasonable overhead and profit shall not exceed 15% combined.

## 7.3 SUSPENSION BY THE CONTRACTOR FOR CONVENIENCE

**7.3.1** The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work of this Subcontract in whole or in part for such period of time as the Contractor may determine. In the event of suspension ordered by the Contractor, the Subcontractor shall be entitled to an equitable adjustment of the Subcontract Time and Subcontract Sum.

**7.3.2** An adjustment shall be made for increases in the Subcontract Time and Subcontract Sum, including profit on the increased cost of performance, caused by suspension, delay or interruption. No adjustment shall be made to the extent:

.1    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible;

.2    that an equitable adjustment is made or denied under another provision of this Subcontract.

## 7.4 ASSIGNMENT OF THE SUBCONTRACT

**7.4.1** In the event of termination of the Prime Contract by the Owner or Prime Contractor, the Contractor may assign this Subcontract to the Owner, with the Owner's agreement, subject to the provisions of the Prime Contract and to the prior rights of the surety, if any, obligated under bonds relating to the Prime Contract. In such event, the Owner shall assume the Contractor's

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format  A401-1997

rights and obligations under the Subcontract Documents. If the Work of the Prime Contract has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted.

**7.4.2**    The Subcontractor shall not assign the Work of this Subcontract without the written consent of the Contractor, nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor.

Insert  B: 7.4.3 Not Applicable

## ARTICLE 8 THE WORK OF THIS SUBCONTRACT

**8.1** The Subcontractor shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others.
*(Insert a precise description of the Work of this Subcontract, referring where appropriate to numbers of Drawings, sections of Specifications and pages of Addenda, Modifications and accepted Alternates.)*
Division 1-15 - See subcontractor attached scope and exclusions    *DATED 1/10/03   3 pgs*

The Subcontractor agrees to maintain the construction schedule that will be provided by the Contractor and to avoid delays to other trades.

Subcontractor shall be responsible for coordination of work with Contractor, owner, ower representatives and other subcontractor(s).

All work to be performed in accordance with the prime contract.

## ARTICLE 9  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**9.1** The Subcontractor's date of commencement is the date from which the Contract Time of Paragraph 9.3 is measured; it shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Contractor.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
Notice to proceed is effective immediately.

**9.2** Unless the date of commencement is established by a notice to proceed issued by the Contractor, or the Contractor has commenced visible Work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

**9.3** The Work of this Subcontract shall be substantially completed not later than
*(Insert the calendar date or number of calendar days after the Subcontractor's date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Subcontractor's Work, if not stated elsewhere in the Subcontract Documents.)*
Completion date  shall be defined by project schedule

, subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*
Liquidated damages shall be assessed up to a maximum of $1000 per calendar day and shall not exceed the amount of liquidated damages assessed by owner as per prime contract.

**9.4** With respect to the obligations of both the Contractor and the Subcontractor, time is of the essence of this Subcontract.

**9.5** No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Paragraph 5.3.

## ARTICLE 10    SUBCONTRACT SUM

**10.1**    The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of
$ One Million Fourty Thousand Two Hundred and Eighty Five Dollars Dollars ($1,042,285.00   ), subject to additions and

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format  A401-1997

deductions as provided in the Subcontract Documents.

**10.2**    The Subcontract Sum is based upon the following alternates, if any, which are described in the Subcontract Documents and have been accepted by the Owner and the Contractor:
*(Insert the numbers or other identification of accepted alternates.)*

10.2.1 Value of North Parking Lot (Has Been incorporated/included into subcontract price in Section 10.1: $24,000)

**10.3**    Unit prices, if any, are as follows:

Unit Price 1:

Insert_C: Insert_C:

### ARTICLE 11    PROGRESS PAYMENTS

**11.1**    Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to applications for payment submitted by the Contractor to the Architect, and certificates for payment issued by the Architect, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents. Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor and Subcontractor for Work properly performed by their contractors and suppliers shall be held by the Contractor and Subcontractor for those contractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor or Subcontractor for which payment was made to the Contractor by the Owner or to the Subcontractor by the Contractor, as applicable. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor or Subcontractor, shall create any fiduciary liability or tort liability on the part of the Contractor or Subcontractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor or Subcontractor for breach of the requirements of this provision.

**11.2**    The period covered by each application for payment shall be one calendar month ending on the last day of the month, or as follows:   Original notarized invoice, **using appropriate AIA form**, must be received at Contractor's office no later than the 26th day of each month.  Invoices must be submitted in duplicate, with appropriate partial release executed.  Amount (percentage) completed to be agreed upon by Owner, Contractor, and Subcontractor.  In the event that no agreement is reached, Contractor determined amount shall be deemed final.

**11.3**    Provided an application for payment is received by the Contractor not later than the 26th day of a month, the Contractor shall include the Subcontractor's Work covered by that application in the next application for payment which the Contractor is entitled to submit to the Architect. The Contractor shall pay the Subcontractor each progress payment within three working days after the Contractor receives payment from the Owner. If the Architect does not issue a certificate for payment or the Contractor does not receive payment for any cause which is not the fault of the Subcontractor, the Contractor shall pay the Subcontractor, on demand, a progress payment computed as provided in Paragraphs 11.7, 11.8 and 11.9.

**11.4**    If an application for payment is received by the Contractor after the application date fixed above, the Subcontractor's Work covered by it shall be included by the Contractor in the next application for payment submitted to the Architect.

**11.5**    Each application for payment shall be based upon the most recent schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as the Contractor may require. This schedule, unless objected to by the Contractor, shall be used as a basis for reviewing the Subcontractor's applications for payment.

**11.6**    Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

**11.7**    Subject to the provisions of the Subcontract Documents, the amount of each progress payment shall be computed as follows:

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

PK
10/17

**11.7.1**  Take that portion of the Subcontract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to the Contractor on account of the Work of the Subcontractor. Pending final determination of cost to the Contractor of changes in the Work which have been properly authorized by the Contractor, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

**11.7.2**  Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by the Contractor, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in the Contractor's application for payment;

**11.7.3**  Subtract the aggregate of previous payments made by the Contractor; and

**11.7.4**  Subtract amounts, if any, calculated under Subparagraph 11.7.1 or 11.7.2 which are related to Work of the Subcontractor for which the Architect has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

**11.8**  Upon the partial or entire disapproval by the Contractor of the Subcontractor's application for payment, the Contractor shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

## 11.9    SUBSTANTIAL COMPLETION
**11.9.1**  When the Subcontractor's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the certificate for payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, deducting any portion of the funds for the Subcontractor's Work withheld in accordance with the certificate to cover costs of items to be completed or corrected by the Subcontractor. Such payment to the Subcontractor shall be the entire unpaid balance of the Subcontract Sum if a full release of retainage is allowed under the Prime Contract for the Subcontractor's Work prior to the completion of the entire Project. If the Prime Contract does not allow for a full release of retainage, then such payment shall be an amount which, when added to previous payments to the Subcontractor, will reduce the retainage on the Subcontractor's substantially completed Work to the same percentage of retainage as that on the Contractor's Work covered by the certificate.

## ARTICLE 12    FINAL PAYMENT
**12.1**  Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.
*(Insert provisions for earlier final payment to the Subcontractor, if applicable.)*

**12.2**  Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

## ARTICLE 13    INSURANCE AND BONDS
**13.1**  The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

| Insert D: | Insurance requirements: | |
| --- | --- | --- |
| Insert E: | General liability: | $1,000,000 |

© AIA DOCUMENT A401 - CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format A401-1997
11



| Insert F: | Worker's Comp | statutory |
| Insert G: | Auto Liability | $1,000,000 |
| Insert H: | Certificates to be issued on an Acord form. Cancellation clause shall be modified to include 30 day |
| Insert I: | notice to contractor of cancellation. A waiver of subrogation, in favor of Contractor, shall also be issued. |

Contractor and Owner shall be named as additional insured on Subcontractor's General Liability and Auto Liability insurance policy(ies).Subcontractor shall maintain it's own inland marine insurance for theft of plant. Goel Construction Services,Inc. and Delaware Cornerstone Builders, Inc. shall be both certificate holders as well as additional insureds.

**13.2**    Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor.

**13.3**    Certificates of insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Article 13 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required in Article 12. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.

**13.4**    The Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required of the Contractor under the Prime Contract.

**13.5**    The Contractor shall promptly, upon request of the Subcontractor, furnish a copy or permit a copy to be made of any bond covering payment of obligations arising under the Subcontract.

**13.6**    Performance Bond and Payment Bond:
*(If the Subcontractor is to furnish bonds, insert the specific requirements here.)*
 Subcontractor is required to provide 100% performance and payment bond on AIA forms. Surety must be Treasury listed.

**13.7    PROPERTY INSURANCE**
**13.7.1**    When requested in writing, the Contractor shall provide the Subcontractor with copies of the property and equipment policies in effect for the Project. The Contractor shall notify the Subcontractor if the required property insurance policies are not in effect.

**13.7.2**    If the required property insurance is not in effect for the full value of the Subcontractor's Work, then the Subcontractor shall purchase insurance for the value of the Subcontractor's Work, and the Subcontractor shall be reimbursed for the cost of the insurance by an adjustment in the Subcontract Sum.

**13.7.3**    Property insurance for the Subcontractor's materials and equipment required for the Subcontractor's Work, stored off site or in transit and not covered by the Project property insurance, shall be paid for through the application for payment process.

**13.8    WAIVERS OF SUBROGATION**
**13.8.1**    The Contractor and Subcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner as a fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format  A401-1997
12

## ARTICLE 14    TEMPORARY FACILITIES AND WORKING CONDITIONS

**14.1**    The Contractor shall furnish and make available to the Subcontractor the following temporary facilities, equipment and services; these shall be furnished at no cost to the Subcontractor unless otherwise indicated below:

Subcontractor shall be responsible for all portable toilet facilities and drives.  Prime Contractor to provide use of office trailer and free use of trailer telephone and electric.   All long distance bills incured by sucontractor will be billed to subcontractor.

*(handwritten: 7/7/11/2002   PK 1/21/03)*

**14.2**    Specific working conditions:
*(Insert any applicable arrangements concerning working conditions and labor matters for the Project.)*

14.2.1      Subcontractor shall provide adequate manpower at project at all times.  Contractor shall determine minimum adequate subcontractor manpower.  Failure to provide adequate manpower shall result in subcontractor being wholly responsible for any liquidated damages and delays incurred by contractor; subcontractor shall be also wholly responsible for any Contractor costs (including but not limited to supervision and equipment rental).

14.2.2      Subcontractor shall be compliant with all provisions of the Prime Contract, including wage rates.  Subcontractor shall provide **three** (3) original copies of certified payrolls and statement of compliance within seven (7) calander days after the completion of a subcontractor pay period.  The certified payrolls and statement of compliance shall be provided, even if no work is performed during the subcontractor pay period. Each week's certified payroll shall be sequentially numbered.

14.2.3      Subcontractor shall provide appropriate representation at all scheduled meetings, unless waived in writing by Contractor.

14.2.4      Subcontractor shall submit daily job reports to Contractor.  Contractor shall provide reproducible format for daily report(s).

14.2.5      Subcontractor shall provide on-site project superintendent.  This individual shall be accessible by cellular phone.

14.2.6      All subcontractor personnel shall wear appropriate photo identification.  This identification shall include, photograph of employee, employee name, name of subcontractor, address of subcontractor, and phone number of subcontractor. 14.2.7 Subcontractor is required to have all subcontracts approved by Contractor.  All requirements of Prime Contract and this subcontract shall be incorporated in Subcontractor's subcontracts.  Disapproval of any subcontractor's subcontracts shall not be considered termination for convenience **as required by prime contract.**

14.2.8      Contractor reserves the right to approve or reject any subcontractor personnel.  Disapproval (rejection) of any subcontractor personnel shall not be considered an improper termination of the contract or suspension of the contract.

14.2.9      Project site shall be drug-free, no smoking, and alcohol free area.

14.2.10      Subcontractor shall provide project organization chart, including pager / home phone numbers for managerial personnel.

14.2.11      Any media statements must be approved in advance by Contractor.

14.2.12      Subcontractor shall provide and maintain at project site at all times, hazard communication program, safety program, AIDS awareness program, MSDS sheets, project organization chart, equal opportunity program, list of emergency phone numbers, and all other appropriate information.

## ARTICLE 15    MISCELLANEOUS PROVISIONS

**15.1**    Where reference is made in this Subcontract to a provision of another Subcontract Document, the reference refers to that provision as amended or supplemented by other provisions of the Subcontract Documents.

**15.2**    Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*
Interest rate shall be at the US Department of Treasury's 30-year bond rate (as published in the Washington Post).

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's, Contractor's and Subcontractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**15.3**    Retainage and any reduction thereto is as follows:
All progress payments are subject to a maximum of ten (10) percent retainage or as allowed by prime contract.  All retainage

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.



shall be paid when retainage is released and paid from owner and shall be billed (if not earlier) no later than at the completion of subcontractors punchlist.

**15.4** The Contractor and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation, any consequential damages due to either party's termination in accordance with Article 7.

## ARTICLE 16    ENUMERATION OF SUBCONTRACT DOCUMENTS

**16.1** The Subcontract Documents, except for Modifications issued after execution of this Subcontract, are enumerated as follows:

**16.1.1** This executed 1997 edition of the Standard Form of Agreement Between Contractor and Subcontractor, AIA Document A401-1997;

**16.1.2** The Prime Contract, consisting of the Agreement between the Owner and Contractor dated as first entered above and the other Contract Documents enumerated in the Owner-Contractor Agreement;

**16.1.3** The following Modifications to the Prime Contract, if any, issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:

Modification                                                Date

**16.1.4** Other Documents, if any, forming part of the Subcontract Documents are as follows:
*(List any additional documents that are intended to form part of the Subcontract Documents. Requests for proposal and the Subcontractor's bid or proposal should be listed here only if intended to be part of the Subcontract Documents.)*
1.Subcontractor quote dated January 10 ,2003  $1,042,285.00

This Agreement entered into as of the day and year first written above.

CONTRACTOR *(Signature)*            *BY DIRECTION*            SUBCONTRACTOR *(Signature)*

Piyush J. Goel, President
*(Printed name and title)*                                            *(Printed name and title)*

© AIA DOCUMENT A401 -CONTRACTOR-SUBCONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 3802-arica.aia -- 1/10/2003. AIA License Number 1128754, which expires on 1/8/2004.

Electronic Format  A401-1997
14

# ARICA CONSULTING & CONTRACTING

**12545 Frederick Road**
**West Friendship, MD 21794**

**Office Phone: (410) 489-9412**                                        **Fax: (410) 489-9454**

January 10, 2003


Goel Construction Services

Attn:  P.J. Goel

Re:    IFB 512 (P) – 01 – 03
       V512 (P) C – 654 to #5

QUOTE

We are pleased to provide you the following pricing and scope of work as requested.

Scope of work as listed below and outlined in contract IFB 512, awarded date of December 2, 2002.

1) Division #1 – Except as noted in exclusions.
2) Division #2 – Except as noted in exclusions.
3) Division #3 – Except as noted in exclusions.
4) Division #4 – Except as noted in exclusions.
5) Division #5 – Except as noted in exclusions.
6) Division #6 – Except as noted in exclusions.
7) Division #7 – Except as noted in exclusions.
8) Division #8 – Except as noted in exclusions.
9) Division #9 – Except as noted in exclusions.
10) Division #10 – Except as noted in exclusions.
11) Division #11 – Except as noted in exclusions.
12) Division #12 – Except as noted in exclusions.
13) Division #13 – Except as noted in exclusions and unit price #1.
14) Division #15 – Except as noted in exclusions.



** EXCLUSIONS **

Division #1

    1) 01010 Paragraph 1.12 A,B,C.
    2) 01010 Paragraph 1.16.
    3) 01010 Paragraph 1.17 A,B,D.
    4) 01010 Paragraph 1.18.
    5) 01010 Paragraph 1.19 Electric only.
    6) 01568 Paragraph 1,2.
    7) 01568 Paragraph 1,3.

Division #2

    1) 02531 Paragraph 1 – 19.
    2) 02713 Paragraph Pages 1 – 16.

Division #13

    1) All of Division 13850.

Division #15

    1) 15250 – All Mech., Plumbing insulations per contract.

Division #16

All of Division 16050 – 16510.

General Exclusions:

    1) Removal of rock over 2 L.F. in size each.
    2) Cut, remove, haul, and dispose of unusable soils – to be priced if required as unit pricing later.
    3) Demolition, removal disposal of any uncovered objects not indicated on drawings.
    4) Hauling of unused or excess soils from VA property.
    5) Office trailer, phone service.



6) C.P.M. scheduling – Arica will generate a bar schedule with Goel.
7) Lead paint removal and disposal.
8) Asbestos removal and all hazardous waste and disposal.

BASE BID LESS Deduct Bid Alt. #1    =        $ 1,018,285.00
Add alt #1 per IFB 512              =        $    24,000.00

          **TOTAL**          =        **$1,042,285.00**

Add – Unit Price #1, Division #13
Sprinkler System complete for Crawl spaces,
 Dry Pipe Systems                  =        $    30,000.00

If any questions or need further information please call.

Sincerely,

Thomas J. Twigg
Vice President



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
ARICA CONSULTING & CONTRACTING, INC.,               )
                                                    )
                            *Plaintiff*,            )
                                                    )  Civil Action No.:
        v.                                          )  1:07-cv-01661-EGS
                                                    )
GOEL CONSTRUCTION SERVICES, INC.,                   )  Judge Emmet G. Sullivan
                                                    )
                            *Defendant*.            )
_____)

## <u>ORDER</u>

UPON CONSIDERATION of Defendant Goel Services, Inc. f/k/a Goel Construction Services, Inc.'s Motion to Dismiss, any opposition thereto, and the record herein, it is this _____ day of _____, 2008, hereby

ORDERED that the Motion to Dismiss is GRANTED, and it is

FURTHER ORDERED that Plaintiff Arica Consulting & Contracting, Inc.'s Complaint and all causes of action therein are hereby DISMISSED.

_____
Emmet G. Sullivan
Judge, United States District Court for the
District of Columbia