UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARICA CONSULTING & CONTRACTING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 1:07-cv-01661-EGS |
| GOEL CONSTRUCTION SERVICES, INC., ) | |
| ) | Judge Emmet G. Sullivan |
| Defendant. ) | |
| ) | |

**PLAINTIFF ARICA CONSULTING & CONTRACTING, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Arica, Consulting & Contracting, Inc., submits its Memorandum in support of its Opposition to Defendant, Goel Services, Inc. f/k/a Goel Construction Services, Inc.'s (Goel), Motion to Dismiss. Arica seeks recovery from Goel for work, labor and material provided to a public construction project for which Goel has failed and refused to pay Arica.

**I. STATEMENT OF FACTS**

The United States Department of Veterans Affairs (VA) awarded Delaware Cornerstone Builders, Inc. (DCB) contract numbered V512(P)C-654, Task Order 5 (Contract) in connection with a project commonly known as Building 10 Replacement/PHP VA MD HealthCare System, (Project), located at Perry Point, Maryland. Thereafter, on or about December 29, 2002, DCB, as prime contractor, allegedly entered into a subcontract agreement (Subcontract) with Goel, by the terms of which Goel was to purportedly perform some of the work included in the Contract.

In turn, on or about January 10, 2003, Goel executed an agreement with Arica (Sub-subcontract), by the terms of which Arica was to perform much or all of the work required under Goel's agreement with DCB, including the demolition of an existing building and construction of

a new building in its place, exclusive of electrical, plumbing and mechanical, for the subcontract price of $1,072,285.

Arica has substantially completed its work in strict conformity with the plans and specifications for the Project. Without justification, however, Arica has only received $894,145.20, and Goel has failed to pay Arica the remaining earned contract balances due of $148,139.80. In addition, during the course of construction on the Project, Goel directed Arica to furnish additional work, labor and material to the Project. Goel has refused to pay for that extra and additional work for which it issued approved change orders in the net amount of $24,511.33, and failed to approve further change orders for other work it required totaling $24,501.90.

## II. ARGUMENT

### A. Standard of Review.

A motion to dismiss under FRCP 12(b)(6)[1] tests the legal sufficiency of the complaint. *Smith v. Frye*, 488 F.3d 263, 274 (4th Cir. 2007). In considering a Rule 12(b)(6) motion, the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleadings in a light most favorable to the non-moving party. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, 127 S. Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). However, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "to nudge [his] claims across the line from conceivable to plausible.

---

[1] Goel has submitted an affidavit that presents matters outside the pleadings in connection with its Motion and suggests that the Court may consider the Motion under FRCP 56. However, the Motion is not properly before the Court under that Rule, and Arica has not addressed the issues against a summary judgment standard, because Goel has not complied with Local Civil Rule 7 (h).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 321, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In addition, the complaint must include the "grounds" of plaintiff's entitlement to relief because a mere formulaic recitation of the elements of a cause of action is insufficient. <u>Eleson v. U.S.</u>, 518 F. Supp. 2d 279, 282 (D.D.C. 2007), *quoting Bell Atlantic Corp.*, 550 U.S. ___, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929.

B.  **The Sub-Subcontract Conditional Payment Clause Is Not Applicable Because Goel Was Not The General Contractor.**

Goel asserts that under § 11.3 of the Sub-Subcontract, payment is not due to Arica unless and until Goel receives payment from the VA, the owner of the Project. *Memorandum in Support of Goel Services, Inc.'s Motion to Dismiss Complaint* (Memorandum), 2. However, Goel neglects to reveal that it did not have a contract with the VA, but was a subcontractor to DCB, the actual prime contractor for the Project. Accordingly, Goel was never to "receive payment from the Owner." It is obvious that § 11.3 did not apply to Arica or, at the least, that the parties' intent is not clear from the language of their agreement and there is an unresolved issue of fact in that regard.

C.  **The Sub-Subcontract Conditional Payment Clause Is Not A Bar To Payment To Arica Because Arica Did Not Cause DCB To Fail To Pay Goel.**

In reciting the payment clause of § 11.3 in its Memorandum, Goel omits certain language that would be critical to the application of the clause. § 11.3 does state that Goel will pay Arica within three days after Goel receives payment from the Owner. However – assuming *arguendo* that Goel could properly condition payment to Arica upon the Owner's payment to DCB – §11.3 further obligates Goel to pay Arica where, as here, any failure of the Owner to pay DCB is not the fault of Arica. The Sub-subcontract provision reads:

. . . [Goel] shall pay [Arica] each progress payment within three working days after [Goel] receives payment from the [VA]. If the Architect does not issue a certificate for payment or [Goel] does not receive payment *for any cause which is not the fault of [Arica]*, [Goel] shall pay [Arica], on demand, a progress payment computed as provided in Paragraphs 11.7, 11.8 and 11.9.[2] [Emphasis supplied.]

In its Complaint, Arica alleges that it completed its work on the Project in accordance with the Sub-Subcontract documents, and, at most, Goel raises an unresolved issue of fact for trial.

### D. The Sub-Subcontract's Payment Clause Addresses Merely Payment Timing Not Arica's Right To Payment.

Even if the Sub-Subcontract's payment language were applicable to Arica, the clause merely affects the timing of the payment, not Arica's right to such payment. In Maryland, absent express and unequivocal language making payment contingent upon a third party's payment, clauses such as § 11.3 are interpreted to merely allow the contractor a reasonable amount of time after demand before payment is due. *Richard F. Kline, Inc., et al. v. Shook Excavating & Hauling, Inc.*, 165 Md. App. 262, 885 A.2d 381 (2005).

In the case *sub judice* the Sub-Subcontract language requires [Goel] to pay [Arica] "within three working days after the Contractor receives payment from the Owner." In order to deny payment to the subcontractor until payment is received from a third party in Maryland, the controlling language must present a clear "condition precedent" to payment. The Court of

---

[2] Goel similarly omits from its reference to § 11.7 the key language of 11.7.4 allowing merely for Goel to withhold from Arica's progress payment amounts withheld from Goel's progress payment because of a failure by Arica:

[In calculating Arica's payment, Goel may] [s]ubtract amounts, if any, calculated under 11.7.1 or 11.7.2 which are related to Work of [Arica] for which the Architect has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of [Arica].

Appeals has defined a condition precedent as "a fact, other than a mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises." *Id.*, 165 Md. App. at 273, 885 A.2d at 387, *citing Chirichella v. Erwin*, 270 Md. 178, 310 A.2d 555 (1973). While there are no "magic words" to be employed, to create a condition precedent the parties' intent must be unmistakable. *See, e.g., Gilbane Building Co. v. Brisk Waterproofing Co., Inc.*, 86 Md. App. 21, 585 A.2d 248 (1991). Words such as "if," "provided that," "when," "after," "as soon as," and "subject to" have been identified by the Maryland appellate courts as expressing the parties' intent to create a condition precedent to payment. *Richard F. Kline, Inc.*, 165 Md. App. at 274, *citing Gilbane*, 86 Md. App. at 26-27.

Even if the payment provisions of Section 11 were applicable, the parties did not clearly intend to condition payment to Arica upon receipt of funds from the VA or DCB. Under such circumstances, Goel can not now attempt to unfairly shift the risk of payment to its subcontractor and refuse to pay Arica.

E.   **Arica's Alternative Claim In *Quantum Meruit* Is Not Barred.**

Arica agrees that it may recover under *quantum meruit* theory only if the Sub-subcontract is voided or found to be unenforceable for some other reason. However, Arica has pleaded *quantum meruit* as an alternative theory of recovery, which is plainly permissible under the Rules. Indeed, it is axiomatic that where there is a substantial breach of a subcontract, the non-breaching subcontractor may forego suit on the contract and sue for the reasonable value of his performance. Moreover, he may recover in *quantum meruit* where, as here, he has performed work outside the terms of the subcontract that benefit the breaching party. *See U.S. ex rel D & P Corp. v. Transamerica Insurance Co.*, 881 F.Supp. 1505, 1508-09 (D.Kan. 1995).

F.  **The Exhaustion of Administrative Remedies Clause In The Contract Disputes Act Is Inapplicable To This Action.**

Goel's argument that Arica failed to exhaust its administrative remedies before filing the present action fails on several grounds. First, as discussed above, Arica can not be "bound to Goel in the same way that Goel is bound to the Owner." DCB, not Goel, was the prime contractor on the Project, and Goel did not have a contractual relationship with the VA in connection with the Project. Accordingly, Goel's assertion that the Sub-subcontract incorporated its contractual obligations to DCB is irrelevant.

Second, Goel does not identify any provision of the Sub-subcontract by which it contends Arica agreed that its claims would be contingent upon Arica's recovery from any third party. Indeed, § 5.4 of the Sub-Subcontract describes how Arica is to be compensated if extra work is ordered without agreement in advance as to price. Meanwhile, in order to require the subcontractor to submit its claims to the prime contract disputes process, the subcontract must expressly incorporate the prime contract disputes clause. A general "flow down" clause, such as the one in the Sub-Subcontract, will not suffice. *See, John W. Johnson, Inc. v. Basic Constr. Co.*, 429 F.2d 764, 774-76 (1970) (subcontractor not bound by prime contract disputes clause because subcontract failed to adequately incorporate said disputes clause by reference); *Beacon Constr. Co. of Mass., Inc., v. Prepakt Concrete Co.*, 375 F.2d 977 (1st Cir. 1967) (subcontractor's mere notice of prime contract disputes clause under prime contract with U.S. Postal Service inadequate to force subcontractor to submit to same clause).

In *Washington Metropolitan Area Transit Authority v. Norair Engineering Corp. et al.*, 553 F.2d 233 (1977), the prime contract provided an administrative dispute resolution process

requiring submission of disputes to the WMATA contracting officer and then to the Army Corps of Engineers Board of Contract Appeals. The agreement between Norair, the general contractor, and its subcontractor incorporated by reference the prime contract using language similar to that in Article 2 of the Sub-Subcontract. Based on that language, Norair argued that the subcontractor was bound by the prime contract's disputes procedure and must pursue its claims directly against WMATA. The U.S. Court of Appeals disagreed, holding that a general "flow down" provision (such as we have in the Sub-Subcontract) only applies in matters relating to work specifications and performance, and without an express incorporation into the subcontract, the disputes clause in the prime contract did not bind the subcontractor. *WMATA*, at 235.

Finally, Goel does not even identify the administrative procedures or remedy that it contends would be applicable to Arica's claims. The only administrative scheme related to the Project would be the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 (2000) *et seq.*, under which DCB may have submitted any claims it had under its Contract with the VA. However, the CDA is clearly inapplicable to Arica since it exclusively concerns resolution of claims by contractors in privity with the government. The CDA covers "claims by a contractor against the government relating to a contract." 41 U.S.C. § 605(a). The CDA defines "contractor" as "a party to a Government contract other than the Government." § 601(4). Arica is not a party to the contract between the Department of Veterans Affairs and DCB. Indeed, § 1.3 (2) of the Sub-Subcontract specifically states that it will not be construed to create a contractual relationship of any kind between the Owner and Arica.

## III. CONCLUSION

For the foregoing reasons, Goel's Motion to Dismiss must be denied.

Respectfully submitted,

ARICA CONSULTING & CONTRACTING, INC.,
By its attorneys:


/s/ Eric R. Stanco
_____
Eric R. Stanco
(DC Bar No. 456896)
erstanco@suretylaw.com
Valerie Elizabeth Powell
vepowell@suretylaw.com
(DC Bar No. 474117)
Stanco & Associates
126 C Street, N.W.
Washington, D.C. 20001
(202) 331-8822
(202) 331-9705 (facsimile)


### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Memorandum in Opposition to Defendant's Motion to Dismiss and the proposed Order were served electronically this 27th day of May, 2008, to all counsel of record and parties appearing *pro se* in this matter.


/s/
_____
Valerie Elizabeth Powell

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | |
|---|---|
| ARICA CONSULTING & CONTRACTING, INC., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 1:07-cv-01661-EGS |
| GOEL CONSTRUCTION SERVICES, INC., ) | |
| ) | Judge Emmet G. Sullivan |
| **Defendant.** ) | |

## ORDER

Upon consideration of the Motion to Dismiss of Defendant, Goel Construction Services, Inc., a/k/a/ Goel Services, Inc., and Plaintiff, Arica Consulting & Contracting Inc.'s Opposition thereto, it is by the Court this _____ day of _____, 2008,

ORDERED, that the Motion be, and the same hereby is, denied.

_____
Superior Court of the District of Columbia

Copies to:

    Paul V. Waters, Esquire
    Waters & Wise, P.L.L.C.
    3243 P Street, N.W.
    Washington, D.C. 20007