### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ARICA CONSULTING & CONTRACTING, INC., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Civil Action No.: |
| v. ) | 1:07-cv-01661-EGS |
| ) | |
| GOEL CONSTRUCTION SERVICES, INC., ) | Judge Emmet G. Sullivan |
| ) | |
| *Defendant*. ) | |
| _____) | |

### GOEL SERVICE, INC.'S REPLY TO THE OPPOSITION TO
### THE MOTION TO DISMISS COMPLAINT

Defendant Goel Services, Inc., f/k/a Goel Construction Services, Inc. ("Goel"), by counsel, in reply to Arica Consulting & Contracting's Opposition to Goel's Motion to Dismiss Complaint, states as follows:

### ARGUMENT IN REPLY

### I.    Arica is bound to the Prime Contract's Disputes Procedure.

Delaware Cornerstone Builders, Inc. ("DCB") entered into a Prime Contract with the Department of Veterans Affairs  ("VA" or "Owner") to perform certain work on a construction project (the "Prime Contract") known as the "Building 10 Replacement/Partial Hospitalization Program at VA Medical HealthCare Systems Perry Point, MD, Project #512-172" (the "Project").  Supplemental Affidavit in Support of Goel Services, Inc.'s Motion to Dismiss ("Affidavit"), ¶ 3.  DCB entered into a contract with Goel whereby Goel agreed to perform certain portions of DCB's Project Work.  Affidavit, ¶ 4.  Goel and Arica Consulting and Contracting, Inc. ("Arica") entered into a subcontract agreement (the "Subcontract") whereby Arica agreed to perform certain portions of Goel's Project Work.  Affidavit, ¶ 5.

The Subcontract specifically provided that the Prime Contract was incorporated into the Subcontract and that Arica was bound to the provisions of the Prime Contract, to the extent of Arica's work, in the same way that Goel was bound:

> *1.1    The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein... These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral.* (emphasis added)
>
> *2.1    The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and to the extent the provisions of the... Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such documents, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract. Where a provision of such documents is inconsistent with a provision of this Agreement, this Agreement shall govern. ...*

Exhibit 1 to the Affidavit in Support of Goel's Motion to Dismiss, ¶¶ 1.1 & 2.1.

Arica's Complaint is barred because Arica has failed to exhaust the administrative remedies under the Prime Contract. *Eleson v. United States*, 518 F.Supp.2d 279, 283 (D.D.C. 2007)*,* 518 F.Supp2d at 283 ("as plaintiff has failed to exhaust her administrative remedies, a mandatory prerequisite to sue, the Court must dismiss plaintiff's claim…"); *Norment Sec. Group, Inc. v. Travelers Cas. & Ins. Co,* 505 F.Supp.2d 97, 105 (D.D.C. 2007) (*quoting Seal & Co., Inc. v. A.S. McGaughan Co., Inc.,* 907 F.2d 450, 455 (4th Cir. 1990)) ("The court concluded that the parties were "contractually bound to exhaust the administrative procedures available to

them and consequently, that the district court erred when it denied [defendant's] motion to stay the proceedings pending the exhaustion of those procedures.")  Arica has failed to address the cases from this Court which require Arica to exhaust administrative remedies.[1]

It is undisputed that Arica has failed to exhaust administrative remedies prior to filing its Complaint.  Therefore, the Complaint is barred and should be dismissed as a matter of law.

## II.    The Subcontract creates condition precedents to payment.

A condition precedent is a "fact, other than a mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises."  *Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.*, 165 Md.App. 262, 270, 885 A.2d 381, 386 (2005) (*quoting Gilbane Bldg. Co. v. Brisk Waterproofing Co., Inc.*, 86 Md.App. 21, 26, 585 A.2d 248 (1991)).  "Conditions precedent can be created absent 'special' language."  *Id.* Language that is typically associated with the creation of a condition precedent includes the words and phrases "when" "after" "as soon as" "subject to" "provided that" and "if."  *Id.* (*citing Chirichella v. Erwin*, 270 Md. 178, 182, 310 A.2d 555 (1973)).

The Subcontract clearly creates a condition precedent to Arica's right to receive progress and final payments:

> *The Contractor shall pay the Subcontractor each progress payment within three days after the Contractor receives payment from the Owner.*

Exhibit 1 to the Affidavit in Support of Goel's Motion to Dismiss, ¶ 11.3 (*emphasis added*).  It further provided:

> *Subtract amounts, if any, calculated under Subparagraph 11.7.1 or 11.7.2. which are related to Work of the Subcontractor for which the Architect has*

---

[1]    The cases relied upon by Arica in opposition to Goel's Motion to Dismiss are not applicable to the present matter.  They discuss incorporation by reference of terms in a contract signed after the subcontract agreement, specific contractual language that limits the scope of incorporation, and the right to pursue a claim against a Miller Act payment bond.

> *withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.*

Exhibit 1 to the Affidavit in Support of Goel's Motion to Dismiss, ¶ 11.7.3.  The Subcontract further states:

> *Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor <u>when the Subcontractor's work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner.</u>*

Exhibit 1 to the Affidavit in Support of Goel's Motion to Dismiss, ¶ 12.1 (*emphasis added*).

Arica is not entitled any payment until Goel has received payment for Arica's work from the VA (through DCB) and is not entitled to payment for work that has been rejected by the VA. Therefore, the Complaint is barred as a matter of law.

## III.    Arica did not complete its work and abandoned the Project.

Arica did not complete its work and abandoned the Project.  Affidavit, ¶ 7; Exhibit 1 to the Affidavit.  Arica did not complete the roof work for the Project and has not provided a warranty to the VA for the roof work.  Affidavit, ¶ 8; Exhibit 2 to the Affidavit.  Arica did not complete the landscaping work on the Project and owes a credit to the VA for the landscaping work.  Affidavit, ¶ 9; Exhibit 3 to the Affidavit.  There was flooding in the crawl space due to defects in the connections for the drain work performed by Arica which Arica has failed to correct.  Affidavit, ¶ 10; Exhibit 4 to the Affidavit.  Arica owes credits to the VA for delays it caused to the Project and the VA has reserved the right to assess further delay-related backcharges.  Affidavit, ¶ 11; Exhibit 5 to the Affidavit.

Arica did not complete its work and abandoned the Project.  Arica is not entitled to payment for work that it did not perform or for work which was not performed in accordance

with the Project specifications.  *See* Exhibit 1 to the Affidavit in Support of Goel's Motion to Dismiss, ¶¶ 11.3, 11.7.4, & 12.1.  In addition, Arica owes the VA the costs to correct and warranty Arica's roof work and credits for landscaping, drain connections, and delay.  Therefore, the Complaint is barred and should be dismissed as a matter of law.

IV.      **Recovery in *Quantum Meruit* is barred by the provisions of the Subcontract.**

Recovery in quasi-contract, or unjust enrichment, is only possible in the absence of an express contract.  *U.S. ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 247 (1996) (*citing Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C.Cir. 1973)); *see also Mogavero v. Silverstein*, 142 Md.App. 259, 275-276, 790 A.2d 43, 52 (2002) (*citing Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766, 775, 471 A.2d 1121 (1984); *County Comms. of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94-95, 747 A.2d 600 (2000)).

The terms of the Subcontract define Arica's rights to payment for both the original Subcontract work and for any extra work that that Arica alleges it performed on the Project: Exhibit 1 to the Affidavit in Support of Goel's Motion to Dismiss, ¶ 5.4.

Arica's argument that it can proceed in *quantum meruit* as an alternative theory of recovery is incorrect.  The validity of the Subcontract is not in question.  Therefore, Count Two is barred and should be dismissed as a matter of law.

<u>**CONCLUSION**</u>

WHEREFORE, Goel Services, Inc. respectfully requests this Court to dismiss Arica's Complaint, or, in the alternative, stay Arica's Complaint pending the exhaustion of all administrative remedies and for such other and further relief as this Court deems equitable and just.

Date:   June 2, 2008                    Respectfully submitted,

                                        GOEL SERVICES, INC., by counsel,

                                        WATERS & WISE, PLLC

                                         /s/  Paul V. Waters
                                        Paul V. Waters, D.C. Bar No. 368970
                                        paulwaters@waterswise.com
                                        David Hilton Wise, D.C. Bar No. 427796
                                        davidwise@waterswise.com
                                        3243 P Street, N.W.
                                        Washington, DC 20007
                                        Tel:    (202) 338-1338
                                        Fax:    (202) 338-3888

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ARICA CONSULTING & CONTRACTING, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) 1:07-cv-01661-EGS |
| GOEL CONSTRUCTION SERVICES, INC., | ) |
| | ) |
| *Defendant.* | ) |

**SUPPLEMENTAL AFFIDAVIT IN SUPPORT OF**
**GOEL'S MOTION TO DISMISS COMPLAINT**

1.      My name is Piyush J. Goel.  I am over eighteen years of age.  I am fully competent to make this Affidavit and I have personal knowledge of the facts stated in the Affidavit.

2.      I am currently employed as President of Goel Services, Inc. ("Goel").  In that role, my duties include contract negotiations and oversight of projects and project management.

3.      Delaware Cornerstone Builders, Inc. ("DCB") entered into a contract with the U.S. Department of Veterans Affairs ("VA") whereby DCB agreed to perform certain construction work on a project known as the "Building 10 Replacement/Partial Hospitalization Program at VA Medical HealthCare Systems Perry Point, MD, Project #512-172" (the "Project").

4.      DCB entered into a contract with Goel whereby Goel agreed to perform certain portions of DCB's Project work.

5.      Goel then entered into a subcontract agreement with Arica Consulting & Contracting, Inc. ("Arica") whereby Arica agreed to perform certain portions of Goel's Project work.

6.      I am personally familiar with the facts surrounding the work of the Project. I was responsible for overseeing Goel's performance of its work on the Project and that of its subcontractors, including, but not limited to, Arica.

7.      Arica abandoned the Project before its work was complete. A true copy of correspondence documenting this abandonment is attached hereto as Exhibit 1.

8.      Arica did not complete the Project's roof work and has not provided a warranty for its roof work. A true copy of correspondence documenting this abandonment is attached hereto as Exhibit 2.

9.      Arica did not complete the Project's landscaping work and owes a credit for that unperformed work. A true copy of correspondence documenting this abandonment is attached hereto as Exhibit 3.

10.     There are defects in Arica's drain work which Arica has failed to correct. A true copy of correspondence documenting this abandonment is attached hereto as Exhibit 4.

11.     Arica owes credits to the Owner for delays caused to the Project by Arica and the Owner has reserved the right to assess further delay-related backcharges. A true copy of correspondence documenting this abandonment is attached hereto as Exhibit 5.

I declare that the foregoing is true and correct to the best of my information, belief, and knowledge. Executed on June 2, 2008.



_____
Piyush J. Goel



1201 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20004
202.457.0111  Telephone
202.457.0105  Facsimile

August 19, 2004

Joe Haycock, General Manager
ARICA Consulting and Contracting
7130-E Kit Kat Road
Elkridge, MD  21075

**Serial No.:**        **3802-773**

**Contract No.:**    **V512(P)C-654; Task Order # 05**

**Project No.:**      **512-172A; Bldg. 10 Replacement/PHP**
                  **VA MD HealthCare System, Perry Point, Maryland**

**Subject:**         **Equipment left on-site**

Mr. Haycock:

Per attached email and photographs, the owner has requested thet your equipment and material scatted throughout the occupied areas of the building be promptly gathered and removed from site.

Please coordinate your activities with Ken Morrison at the job site.

If you have any questions, please call me at (240) 764-1606.

Sincerely,

P K Goel
By Direction

```
Exhibit 1 to the Supplemental Affidavit
in Support of Goel's Motion to Dismiss
```

**P K Goel**

---

**From:**           William.Picking@med.va.gov
**Sent:**           Thursday, August 19, 2004 12:57 PM
**To:**             Ken Morrison; P K Goel
**Subject:**        FW: Arica's Departure

**Importance:**     High

      

081904 1 HC      081904 2 Patio.JPG    081904 3 Mech      081904 4 Metal
Ramp.JPG (664 KB)    (717 KB)        Rm.JPG (718 KB)    Roof.JPG (732 K...
                                                              Here it is with 1/2 of the photos.

> -----Original Message-----
> From:      Picking, William F.
> Sent:      Thursday, August 19, 2004 12:50 PM
> To: PK Goel (E-mail); Ken Morrison (E-mail)
> Cc: Allgood, Kim G.; Patterson, Robert J.
> Subject: Arica's Departure
> Importance:  High
>
> Arica pulled their superintendant off the job more than a month ago
> leaving 2 workers.  They have not been on site for more than a week.
> It has become clear that Arica has abandoned the project but remnants
> of their equipment & material remain scattered around this now
> occupied patient care building (see attached photos).  It is requested
> it be promptly gathered up and removed from the site.  The VA picked
> up the material that has been sitting in the main lobby of Bldg 80H yesterday.
>
> Note:  The only work currently being performed is by the VA or its
> separate contractors.
>
> William Picking, Jr.
> VAMHCS Construction Coordinator
>
> <<081904 1 HC Ramp.JPG>>  <<081904 2 Patio.JPG>>  <<081904 3 Mech
> Rm.JPG>>  <<081904 4 Metal Roof.JPG>>



1201 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20004
202.457.0111  Telephone
202.457.0105  Facsimile

December 6, 2004

Joe Haycock, General Manager
ARICA Consulting and Contracting
7130-E Kit Kat Road
Elkridge, MD  21075

**Serial No.:**          **3802-891**

**Contract No.:**        **V512(P)C-654; Task Order # 05**

**Project No.:**         **512-172A; Bldg. 10 Replacement/PHP**
                         **VA MD HealthCare System, Perry Point, Maryland**

**Subject:**             **Roofing problems**

Mr. Haycock:

In spite of our previous written requests, you have not coordinated any meeting with your roofing supplier regarding design and warranty issues.

As the owner has problems with the existing roofing, the owner has decided to hire a roofing contractor to make any required repairs.  To that end, the owner has indicated that the cost of these repairs will be withheld.

Therefore, you will be held responsible for any owner charges incurred by the prime contractor.

If you have any questions, please call me at (240) 764-1606.

Sincerely,

P K Goel
By Direction

Exhibit 2 to the Supplemental Affidavit
in Support of Goel's Motion to Dismiss

## *CERTIFICATE OF SERVICE*

I hereby certify that I have served by hand or first class mail, postage prepaid, the foregoing document to all parties of record.

Dated:        December 6, 2004

Prabodh K Goel



1201 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20004
202.457.0111  Telephone
202.457.0105  Facsimile

September 22, 2004

Joe Haycock, General Manager
ARICA Consulting and Contracting
7130-E Kit Kat Road
Elkridge, MD  21075

**Serial No.:**      **3802-815**

**Contract No.:**    **V512(P)C-654; Task Order # 05**

**Project No.:**     **512-172A; Bldg. 10 Replacement/PHP**
                     **VA MD HealthCare System, Perry Point, Maryland**

**Subject:**         **Delete landscaping**

Mr. Haycock:

Per attached emails, the owner is not satisfied with your proposal for deletion of landscaping.  First off, the owner claims that landscaping is a contract defined term and is defined in the prime contract, section 02480.

The owner claims (per email) that your credit proposal does not even cover the cost of materials required to perform the red stone edging.  The owner has defined a value of $33,609 as being the value of the credit expected for the deletion of landscaping (owner estimate and breakdown was not provided to us).

The owner may hold its projected value against any future progress payments.  If the owner holds any retainage for this item, we (in turn) will hold an equivalent amount against your future requisitions.

If you have any questions, please call me at (240) 764-1606.

Sincerely,

P K Goel
By Direction

```
Exhibit 3 to the Supplemental Affidavit
in Support of Goel's Motion to Dismiss
```

**P K Goel**

| | |
|---|---|
| **From:** | William.Picking@med.va.gov |
| **Sent:** | Thursday, August 26, 2004 4:37 PM |
| **To:** | Kim.Allgood@med.va.gov |
| **Cc:** | Robert.Patterson@med.va.gov; Ken Morrison; P K Goel; Christina.Carter-Kurant@med.va.gov |
| **Subject:** | RE: Delete Landscaping (CO#I) |

**Importance:**        High



CO #I Proposal
Delete Landscap...

       Kim,
This still needs to be done.  There was a substantial landscaping punchlist which has been
completed by others (at a cost to VA) and the items are no longer outstanding.  It is
again recommended CO #I be valued at a credit of
($33,609) per previous attachment pending final resolution.  The credit offerred by DCB is
unreasonble and will not even cover the cost of the materials to do the red stone edging.
Pending credits and charges such as this is why there is not as much money left in the
project as some may think and must be addressed prior to any payment or release of
retainage.  DCB's letter stating they feel the punchlist is valued at $6000 so hold
$12,000 is unreasonable.
Thanks, Bill P.

  <<CO #I Proposal Delete Landscaping.pdf>>

>  -----Original Message-----
> From:      Picking, William F.
> Sent:      Monday, July 26, 2004 1:09 PM
> To: Allgood, Kim G.
> Cc: Patterson, Robert J.
> Subject:  Delete Landscaping (CO#I)
> Importance:     High
>
> Kim,
>
> It is recommended the value of CO #I be placed at a credit of
> ($33,609) per the attached cost breakdown spreadsheet.  Note:  I have
> removed those items which were not in DCB's base contract.  The TO to
> have this work completed by others is significantly more.
>
> William Picking, Jr.
> VAMHCS Construction Coordinator
>
>  << File: Landscaping Cost Breakdown TO vs CO.xls >>



**GOEL**

S E R V I C E S

1201 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20004
202.457.0111  Telephone
202.457.0105  Facsimile

September 3, 2004

Joe Haycock, General Manager
ARICA Consulting and Contracting
7130-E Kit Kat Road
Elkridge, MD  21075

**Serial No.:**          **3802-806**

**Contract No.:**      **V512(P)C-654; Task Order # 05**

**Project No.:**         **512-172A; Bldg. 10 Replacement/PHP**
                                  **VA MD HealthCare System, Perry Point, Maryland**

**Subject:**             **Crawl space problems**

Mr. Haycock:

Per site investigations, it appears that the flooding in the crawlspace is due to improper
connections (see attached email from owner).

This is considered your responsibility to correct.

If you have any questions, please call me at (240) 764-1606.

Sincerely,

P K Goel
By Direction

Exhibit 4 to the Supplemental Affidavit
in Support of Goel's Motion to Dismiss

**P K Goel**

| | |
|---|---|
| **From:** | P K Goel |
| **Sent:** | Monday, September 13, 2004 12:05 PM |
| **To:** | 'William.Picking@med.va.gov' |
| **Cc:** | 'Kim.Allgood@med.va.gov'; 'Edward N. Hershon'; Ken Morrison; Marcia Laraque; 'joe haycock'; 'joe_arica@comcast.net' |
| **Subject:** | RE: differing site condition |

Attached are the letters sent regarding the differing site condition.

**P K Goel**    *(PK.Goel@8a.com)*
**Delaware Cornerstone Builders**
*301 864-2600 x 606*
*240 764-1606 direct line*
*301 864-2603 fax*
*888 4-ASBESTOS* [toll-free]

*Please visit our web site at*   http://www.8a.com

"This email and any attachments to it are confidential and are intended solely for use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the sender. The views expressed in the email message do not necessarily represent the views of Delaware Cornerstone Builders Inc., its subsidiaries, or affiliates."

**From:** William.Picking@med.va.gov [mailto:William.Picking@med.va.gov]
**Sent:** Friday, September 10, 2004 3:05 PM
**To:** P K Goel; Kim.Allgood@med.va.gov
**Cc:** Ken Morrison; Marcia Laraque; joe_arica@yahoo.com; Robert.Patterson@med.va.gov
**Subject:** RE: differing site condition

I have no record of receipt of any DCB ltr dated 7/27/04.  Was this mailed/FAX'd to Kim with no email electronic copy??

With recent findings it will be difficult to allege differing site conditions.  It does not appear the contractual foundation drainage system is tied in anywhere and all 4 downspouts west of the building do not drain to the new 8" storm main as included in SA's.  3 are plugged and 1 floods the basement of 80H. Ken has witnessed first hand.

      -----Original Message-----
      **From:** P K Goel [mailto:pk.goel@8a.com]
      **Sent:** Tuesday, September 07, 2004 2:18 PM
      **To:** Kim.Allgood@med.va.gov
      **Cc:** William.Picking@med.va.gov; Ken Morrison; Marcia Laraque; joe haycock
      **Subject:** differing site condition

      Please see attached letter. - pk

      **P K Goel**    *(PK.Goel@8a.com)*
      **Delaware Cornerstone Builders**
      *301 864-2600 x 606*
      *240 764-1606 direct line*
      *301 864-2603 fax*
      *888 4-ASBESTOS* [toll-free]

      *Please visit our web site at*   http://www.8a.com

9/13/2004

"This email and any attachments to it are confidential and are intended solely for use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the sender. The views expressed in the email message do not necessarily represent the views of Delaware Cornerstone Builders Inc., its subsidiaries, or affiliates."



1201 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20004
202.457.0111  Telephone
202.457.0105  Facsimile

August 26, 2004

Joe Haycock, General Manager
ARICA Consulting and Contracting
7130-E Kit Kat Road
Elkridge, MD  21075

**Serial No.:**        **3802-782**

**Contract No.:**     **V512(P)C-654; Task Order # 05**

**Project No.:**       **512-172A; Bldg. 10 Replacement/PHP**
                       **VA MD HealthCare System, Perry Point, Maryland**

**Subject:**            **Owner backcharges**

Mr. Haycock:

Per attached emails, the owner appears to be backcharging the prime contractor for costs associated with project delays.  Be advised that if the owner backcharges for any of these items, an equivalent amount will be backcharged to you.  If the owner holds retainage for any of these items, an equivalent amount will be retained against you.

Items identified by owner:
    a.    $1365 – furniture storage costs. (email from COTR)
    b.    $4080 – freeze chilled water lines (email from COTR)

There may be other items from the owner.

If you have any questions, please call me at (240) 764-1606.

Sincerely,

P K Goel
By Direction

Exhibit 5 to the Supplemental Affidavit
in Support of Goel's Motion to Dismiss

**P K Goel**

---

| | |
|---|---|
| **From:** | William.Picking@med.va.gov |
| **Sent:** | Thursday, August 26, 2004 1:41 PM |
| **To:** | Kim.Allgood@med.va.gov |
| **Cc:** | Robert.Patterson@med.va.gov; Diane.Stobe@med.va.gov; P K Goel; Ken Morrison; Jane.Manlove@med.va.gov; jensen@polt-design.com; Marcia Laraque |
| **Subject:** | Furniture Storage Costs |

**Importance:**       High

---

Kim,

I have been advised from our Interior Designer that there are $1,365 in additional furniture storage fees associated with the late completion of the New PHP Bldg. Everyone will recall we established a completion and activation schedule that all parties planned according to and at last minute the final inspection was postponed twice. These fees are nominal and are significantly less than what they could have been. I feel confident all VA parties did what they could to mitigate costs where possible. Pls advise how you wish to charge these additional costs to 512-172A (ie: deduct SA etc). In the meantime it will be held in retainage pending final resolution.
Thanks,

William Picking, Jr.
VAMHCS Construction Coordinator

1

**P K Goel**

| | |
|---|---|
| **From:** | William.Picking@med.va.gov |
| **Sent:** | Thursday, August 26, 2004 1:20 PM |
| **To:** | Kim.Allgood@med.va.gov |
| **Cc:** | Robert.Patterson@med.va.gov; William.England@med.va.gov; John.Clisham@med.va.gov; P K Goel; Ken Morrison; envirodemo@juno.com; jensen@polt-design.com |
| **Subject:** | RFI #1 Freeze Chilled Water Lines (512-03-309 Demo 10H) |

**Importance:** High



RFI #1 Freeze
Chilled Water Li...

Kim,

Pls find attached a scanned copy of RFI #1 dated 8/6/04. As everyone is aware we cannot drain and alter the UG chilled water lines during cooling season. The same restriction applied to the New PHP Bldg. We cannot proceed with the demolition of this building untill all remaining utilities have been capped or rerouted, some like water & steam already have been. We have informed EDS that we will proceed with their proposed recommendation to freeze the lines so they can be capped now and allow work to continue. I believe the work is scheduled for next week.

NTP was issued for this project on 7/27/04, approximately 5 months later than that advertised when bid. If NTP had been issued back in February (or even a little later) we would have been in heating season and capping lines would not be an issue. We believe the cost associated with the freezing of the lines should be properly charged to the New PHP Bldg (512-172A) since it is a direct impact resultant from its late completion. The original Contract Completion Date was 10/30/03, and it was extended to 1/6/04 with 3 time extensions.

Pls advise how you wish to authorize/charge the additional $4,080.00.
Thanks,

William Picking, Jr.
VAMHCS Construction Coordinator

  <<RFI #1 Freeze Chilled Water Lines.jpg>>

1

# ENVIRONMENTAL AND DEMOLITION SERVICES, INC.

## RFI # 1

August 6, 2004

Mr. Bill Pickings

It has come to our attention that there is be a problem with shutting off the chilled water lines going to Bldg.#10H that are to be cut and capped. These lines are not serviced by a shut off valve and in order to shut them down you will have to shut down the entire loop witch will affect multiple buildings. This would not have been an issue but since all of the delays with getting this project started we are now into the cooling season and this would be very difficult to bleed off and reenergize the entire loop. Are solution to this problem is to freeze the lines that are to be capped. This would allow all of the affected buildings to run at full capacity and would not affect them at all. However this would be above what are contract requirements are and would be a modifacation. Please let us know how we should proceed. Thank you.

**The above tasks will be a additional cost $ 4,080.00 to the original contract.**

Approval of this agreement _____

Date:    8/6/04 _____

Sincerely,

Steven R. King
EDS Project Mgr.